(No. 38571.—Indict. Nos. 63-638 and 63-639, ▮
Indict. No. 60-2292, ▮

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANTHONY R. WOLLENBERG, Plaintiff in Error.

*Opinion filed May 18, 1967.—Rehearing denied September 27, 1967.*

WARD, J., took no part.

JOSEPH L. STONE, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and CARL M. WALSH, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, Anthony R. Wollenberg, was tried and found guilty by a jury on two indictments, Nos. 63-638 and 63-639, each indictment containing three counts, attempted robbery, attempted murder and aggravated battery. The trial court held the last charge in each indictment merged with the greater offense of attempted murder and sentenced the defendant to 10 to 14 years and 10 to 20 years on counts I and II respectively in indictment No. 63-638 and 12 to 14 and 18 to 20 years respectively on counts I and II of indictment No. 63-639. The circuit court of Cook County further ordered that the sentences imposed run concurrently within indictments and consecutively as between indictments.

Defendant had also been convicted on a previous indictment, No. 60-2292 for armed robbery. This conviction was reversed on appeal (24 Ill.2d 350) and remanded for new trial. On retrial he was again found guilty by a jury and sentenced to 10 to 20 years, the sentence to run concurrently with the sentences imposed on indictment 63-639. Defendant appeals from all three convictions alleging, with respect to indictments 63-638 and 63-639, that his cause should have been dismissed for want of prosecution pursuant to the Four-Term Act, and that he was not proved guilty beyond a reasonable doubt. With respect to indictment 60-2292, he contends that the trial court committed prejudicial error in allowing the State to comment on his failure to testify.

The facts underlying the appeal taken from the convictions on indictments Nos. 63-638 and 63-639 are as follows:

On the evening of January 21, 1963, at approximately 10:00 P.M., Joseph and Alice Tripicchio were home watching television in their second-floor apartment located at 745 North Trumbull Avenue, Chicago. There was a knock on the door and as Tripichio opened the door a man announced, "it's a stickup". When Tripicchio attempted to close the door, the man blocked it with his foot. The intruder then shot Tripicchio once and Mrs. Tripicchio three times after which he fled with an accomplice down the stairs

Defendant Wollenberg, with Roswell John Field, Jr., and John Soukup, was indicted for the crimes arising from the above occurrence. Roswell Field pleaded guilty and testified against defendant, admitting his own guilt in the matter and the State's promise to recommend probation if he so testified. He stated that he and Soukup, on January 21, 1963, planned to burglarize the premises of his aunt, Mrs. Tripicchio. Pursuant to this plan, defendant, whom he had known for some time, was called from a tavern and he agreed to meet them there. At about 8:30 P.M., defendant entered the tavern where Soukup informed him of the plan and asked to borrow his car since theirs would not start. Defendant asked to be included in the burglary and, accordingly, he and the others drove to the Tripicchio home. However, upon finding that someone was home, they returned to the tavern to reconsider their course of action. Wollenberg, indicating he had a gun, devised a scheme to gain access to the Tripicchio apartment and to hold them up. They returned to the Tripicchio's shortly before 10:00 P.M. Soukup and defendant went upstairs to the apartment while he, Field, waited below. Field testified that thereafter he heard shots and a scream, that Soukup came running out exclaiming, "Run, the crazy fool shot", and that defendant followed Soukup out of the building.

Field further testified that he had seen defendant a week before the night of January 21, that at that time Wollenberg had in his possession a sailor's pea cap, and that on the night of the 21st he saw defendant cut holes in the cap. This cap was found on the second-floor landing outside the Tripicchio apartment by patrolman Frank Dobson, one of the investigating officers.

Tripicchio testified that the man at the door held the gun in his left hand but that he couldn't identify him. Mrs. Tripicchio stated that she saw two men standing on the landing, that the man with the gun had his face camouflaged with a lady's silk stocking and was wearing a pea cap which made his identification impossible but that the second man on the landing was the co-defendant Soukup.

Claude B. Hazen testified that he is a forensic micro-analyst employed by the Chicago Police Department, that he took hairs from the pea cap found at the scene of the crime and compared them to hairs taken from the heads of the three defendants, and that, after subjecting these hairs to various scientific tests, he found the hairs taken from the cap and the hair from Wollenberg's head to be similar in every respect except for root structure. This dissimilarity, he explained, was due to the fact that the hairs in the cap had naturally fallen from the head while the hairs taken from Wollenberg's head had been forcibly removed. He further stated that although the science of hair comparison is not as exact as that of fingerprint comparison, it was his opinion that "it is very remote" that the hairs in the cap came from anyone but Wollenberg.

John Soukup testified that he saw Field in the tavern on the night of the 21st but denied planning or participating in the crimes in question. He also testified that between 8:45 and 10:00 o'clock on that night he was in a restaurant where his girl friend, Viola Bosco, worked. This alibi was corroborated by Miss Bosco.

Wollenberg, testifying in his own defense, also denied

any participation in the crimes. He stated that the night of January 21, 1963, he was having a party for his son at home but that he did leave the party from time to time during the evening. He further stated that he was left-handed, and that he had a pea cap like the one found outside the Tripicchio apartment but that he had given it to Field a week before the 21st. He admitted that in July, 1945, he had been sentenced to 2 to 4 years on two charges of burglary and in February, 1950, he had been sentenced to 3 to 7 years on two charges of burglary.

In support of his argument that he was not proved guilty beyond a reasonable doubt, defendant charges that he was never sufficiently identified as the person who shot the Tripicchios. The record does disclose that the victims of the shootings were unable to identify the assailant since his features were concealed. However, there is other testimony and physical evidence in the record to sufficiently identify defendant as the assailant. Roswell Field's testimony was unequivocal. He stated that he had known defendant for some time (a fact acknowledged by defendant), and clearly described the latter's participation in the shootings, including his possession of a gun and the pea cap worn by the gunman and found outside the victims' apartment. If this testimony were believed, there can be no doubt as to the identity of the assailant. Hence, the real question involved here in determining defendant's guilt is not one of identification but rather one of the credibility and weight to be given a witness's testimony.

It is well established that the question of the credibility of witnesses and the weight to be given to their testimony is for the jury to decide. (*People* v. *Calcaterra,* 33 Ill.2d 541; *People* v. *Gates,* 29 Ill.2d 586.) And, it also well established that the testimony of an accomplice, even though it is attended with infirmities (such as malice towards the accused, promises of leniency, *etc.*) and uncorroborated, is sufficient to sustain a guilty finding if it satisfies the jury

beyond a reasonable doubt (*People* v. *Hansen,* 28 Ill.2d 322; *People* v. *Baker,* 16 Ill.2d 364), and that we will not disturb a conviction based thereon unless it is plainly apparent that such degree of proof is lacking. *People* v. *Hansen; People* v. *Todaro,* 14 Ill.2d 594.

Herein, while the accomplice's testimony was attended with infirmities, *viz:* that he was a self-confessed criminal testifying upon promise of leniency, the jury was apprised of these factors and we may assume that they took them into consideration in reaching their verdict. Furthermore, there was corroboration of Field's testimony. The micro-analyst testified that the hairs taken from the pea cap, which was found outside the victims' apartment and which they testified their assailant wore, were similar to those taken from defendant's head, that they were not similar to the hairs taken from the heads of the co-defendants, and that in his opinion it was very remote that the hairs came from anyone but Wollenberg. Certainly, this testimony, based on scientific tests, lends credence to Field's account of the crimes in question. Furthermore, defendant's credibility was impeached by his two prior convictions for burglary. In view of these factors and the evidence as a whole, we find that there was sufficient proof to satisfy the jury as to defendant's guilt beyond a reasonable doubt. Therefore, we will not disturb the guilty verdicts.

We now consider defendant's contention that the State's case against him on the 1963 indictments should have been dismissed for want of prosecution pursuant to the Four-Term Act. That Act (Ill. Rev. Stat. 1961, chap. 38, par. 748, and as restated in Ill. Rev. Stat. 1965, chap. 38, par. 103—5,) provides in pertinent part that a person in custody for an offense and not admitted to bail must be tried within four months of his commitment (120 days under section 103—5) or be discharged unless delay is occasioned by him or "If the court determines that the State has exercised without success due diligence to obtain evidence material

to the case and that there are reasonable grounds to believe that such evidence may be obtained at a later day the court may continue the cause on application of the State for not more than an additional 60 days". (Par. 103—5(c).) The record herein indicates that defendant was arrested on January 26, 1963, and remained in custody until the date of his trial. On May 20, 1963, a date within the four-month statutory limitation, the State filed a petition for extension of time pursuant to the applicable provision of the Four-Term Act on the basis that Mrs. Tripicchio was a material witness in the pending cases against defendant and the named victim in one of them; that in the alleged incident she was shot and seriously wounded; that as of the date of the petition she had not sufficiently recovered so as to be able to attend court, and that the petitioner believed that within approximately six weeks she would be able to attend court. The trial court, after oral argument, granted the State's petition and continued the cause to July 8, 1963. Following hearing on motions on July 8-9, defendant was tried and found guilty July 10-11, 1963, which date was within the sixty days extension granted by the court.

Defendant attacks the propriety of this extension on the basis that it was obtained by factual misrepresentations made by the State. He charges that the State orally represented to the court that Mrs. Tripicchio could not appear since she had a heart condition when in fact she did not, and that this heart condition was the basis for the court's decision. In our examination of the record we find no support for this assertion. Although the assistant State's Attorney did allude to a heart condition of Mrs. Tripicchio in oral argument on the petition, this allusion was only an additional ground to the one recited in the petition and, while erroneous, was occasioned by the State's Attorney's repetition of what he had been told by the husband, Mr. Tripicchio. The ground cited in the petition, that Mrs.

Tripicchio had not at that time sufficiently recovered from her bullet wounds, was sufficient by itself to sustain a granting of the extension. Furthermore, at the trial, Mrs. Tripicchio confirmed that she was unavailable to testify on the date the petition was filed. In any event, the granting of the petition was within the discretion of the trial judge (*People* v. *Poland,* 22 Ill.2d 175), and under the above facts we do not find an abuse of this discretion. While the State also contends that delay was caused by defendant, thereby tolling the statutory limitation, we need not pass on this contention since we find that the defendant was not entitled to discharge in view of the valid extension of time granted by the trial court. We therefore affirm the convictions on these indictments.

As previously stated, with respect to indictment 60-2292, defendant contends that it was prejudicial error for the State to inferentially comment on his failure to testify. The comment complained of and the context in which it occurred, is as follows: "Ladies and gentlemen, you will be returning soon to the jury room to deliberate upon your verdict. Remember there is only one defendant on trial, Anthony Wollenberg. There was only eight witnesses in this case. No one else testified in this case, Mr. Wojcik, Officer Paholke, Officer Sparks and Officer Bischof, Mr. Kaplan and Mr. Wallace testified on behalf of the State. On behalf of the defendant, just two witnesses, Mr. LaBuda and Mr. Lazendorf. No one else testified. Let's get that straight."

Defendant argues that this comment, specifically the language that "No one else testified. Let's get that straight", is such a direct reference to his failure to testify, as to violate both section 6 of division XIII of the Illinois Criminal Code (Ill. Rev. Stat. 1963, chap. 38, par. 734), and the holding by the United States Supreme Court in *Griffin* v. *California,* 380 U.S. 609, 14 L. Ed. 2d 106.

Section 6 expressly provides that the defendant's

"neglect to testify shall not create any presumptions against him, nor shall the court permit any reference or comment to be made to or upon such neglect". Decisions under this section have held that an express reference by the State in closing argument to the defendant's failure to testify constitutes prejudicial error requiring a new trial. (*People* v. *Cheney,* 405 Ill. 258; *People* v. *Annis,* 261 Ill. 157; *Angelo* v. *People,* 96 Ill. 209.) However, other decisions have held that the State may comment that its case is "uncontradicted". *People* v. *Norman,* 28 Ill.2d 77.

The State asserts that the instant case falls within these latter decisions since the prosecutor, by listing the witnesses and stating that "No one else testified. Let's get that straight" was merely referring to the strength and uncontradicted nature of the State's case. We do not share this interpretation of the prosecutor's statement. That statement on its face discloses, as does the entire record, that the State's case was not in fact uncontradicted since it recites that witnesses testified in defendant's behalf. In view of this, and the clear import of the language used, it is apparent to us that the underlying purpose and the ultimate effect of the prosecutor's remarks was to call attention to the defendant's failure to testify, thereby accomplishing by inference what could not be done expressly. As such, we hold that the statement in question constitutes plain error. Accordingly, the judgment of conviction on indictment 60-2292 is reversed and the cause remanded for new trial.

*Indic't. No. 63-638, affirmed,*
*Indic't. No. 63-639, affirmed,*
*Indic't. No. 60-2292, reversed and remanded.*