The People of the State of Illinois, Plaintiff-Appellee, *v.* Theodore Floyd Burnett *et al.,* Defendants—(Theodore Floyd Burnett, Appellant.)

(No. 11521; )

Fourth District—September 5, 1973.

*Supplemental opinion filed upon denial of rehearing October 2, 1973.*

John F. McNichols, Deputy Defender, of Springfield, for appellant.

Thomas P. Carmody, State's Attorney, of Carlinville, (Michael Prall, of Circuit Attorney Project, of counsel,) for the People.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

The defendant was found guilty by a jury of the theft of a truck valued at over $150. Motion for new trial was denied and a sentence of

1 to 2 years in the penitentiary was imposed by the circuit court of Macoupin County. Originally indicted with him were Cornelius Lamar, Gloria Lamar and Henry Lamar. During the course of the trial Cornelius pleaded guilty with an agreement with the State's attorney that he would be sentenced to a period of 1 to 2 years to run concurrently with a Federal sentence he was serving. His sentence was not imposed until the conclusion of the trial. Gloria and Henry were granted immunity from prosecution and all three were witnesses for the People in the case. The defendant contends that his guilt was not established beyond a reasonable doubt, that it was reversible error to deny the defendant's motion to exclude witnesses and that the court erred in denying the defendant's motions for withdrawal of a juror, mistrial and severance.

A supplemental record filed in this case establishes as a matter of fact that the witnesses were excluded and thus there is no basis for this assignment of error.

The defendant's motions for withdrawal of a juror, a mistrial, a severance and a continuance were properly denied. The court adjourned for lunch on October 26, 1970, and did not reconvene until 9 A.M. the following morning. At that time Cornelius Lamar's counsel indicated that he had conversed with the State's attorney that morning to see if he could get the State's attorney to recommend a term of years of not less than 1 nor more than 2 on a plea of guilty. The State's attorney agreed to recommend that the sentence of 1 to 2 years run concurrently with the Federal sentence. It was likewise agreed that Cornelius Lamar's wife, Gloria, and his brother, Henry, would be granted immunity and be dismissed out of the case. The court denied a severance, denied a motion to withdraw a juror and declare a mistrial, and denied a continuance on the grounds that what had transpired required this defendant to adopt different tactics. The court advised the jury that Cornelius had pled guilty, that Henry and Gloria had been granted immunity from prosecution and that the case is now the People v. Theodore Floyd Burnett alone. It will be apparent from the testimony hereafter recited that the trial court committed no error in this procedure.

Cornelius testified that he was presently incarcerated at the United States Penitentiary in Marion, Illinois. On the morning of May 27, he and the defendant had a conversation about the location of some trucks. They proceeded to Carlinville to Weatherford Motors, inquired about a truck, and Burnett obtained a key code number to the truck. They then went to another Ford dealer and had a duplicate key made. They returned to St. Louis, separated and agreed to meet in Alton, Illinois, later that evening with Henry and Gloria. In Alton, truck license plates were obtained. They then departed for Carlinville in Cornelius' 1968 Buick

with Burnett following in a tan Ford pickup truck. Burnett parked the tan truck in Carlinville and proceeded to the Weatherford Motors lot. Burnett then picked up a green truck from the parking lot and they drove back to where they had parked the tan truck. Here Burnett got out of the green truck and into the tan one and Cornelius drove the green truck. Henry and Gloria followed in the 1968 Buick. This testimony was substantially the same as that given by Henry and Gloria. The people in the Buick ran into a highway police roadblock and were thus apprehended. Gloria testified that Burnett told her that he abandoned the tan truck when he ran out of gas, went off the side of the road through a ditch, went across the field, and was later picked up by a State trooper. The Carlinville city police as well as the State trooper testified that the defendant wore a white sweater-type shirt, dark pants and had muddy, narrow-toed shoes when seen at the Macoupin County jail in the early morning. The defendant's fingerprints were found on both the green and tan truck.

The testimony above given is further supported by a witness who was walking along the street and saw a person get out of a 1968 Buick and look through the front door of the showroom. He was about 70 to 80 feet from the person when he made the observation that the person was a Negro male, wore a white sweater, and had on dark pants. The Buick was driven east and this same Negro male walked east. He went behind some vehicles at a gas station. The witness then saw another person, talked with him and they returned to the gas station to investigate what was going on. The witness again saw the Buick with three people in it. These two witnesses went to investigate at the used car lot and suddenly there were long horn blasts and a green truck pulled out fast and then the 1968 Buick which they had seen earlier with three occupants in it sped away in the same direction. These two witnesses then reported what they had seen to someone at Weatherford's garage, and headed east on Route 108. They then saw the tan and green trucks parked along the side of the road. The green truck was the one they had seen driven away from the garage lot. The garage notified the sheriff's office and the roadblock was set up. The garage owner testified that after he was notified, he and a friend headed out of Carlinville east on Route 108, saw a tan truck, a State trooper searching the nearby bushes and a car speeding away. A little farther on they saw his green truck. They came back to the trooper and noticed quite a bit of mud and some fresh footprints. The footprints had a sharp pointed toe impression. At 5:30 that morning, he saw Mr. Burnett in the county jail. His pant legs were wet, his shoes were muddy and his shoes had narrow pointed toes.

The State trooper heard a radio message about a stolen green truck

and observed three vehicles proceeding in an easterly direction at a high rate of speed. He turned around, headed back and came upon a light colored truck with a 1968 Buick next to it. The car took off rapidly and the person who had been standing next to the car ran away.

■■■ We think every issue raised on this appeal has been decided adversely to the defendant in *People v. Wollenberg*, 37 Ill.2d 480, 229 N.E.2d 490, or *People v. Mentola*, 47 Ill.2d 579, 268 N.E.2d 8. In the latter case the Illinois Supreme Court referred to the oft-stated rule that the testimony of an accomplice is necessarily received with caution but that such testimony even if uncorroborated is sufficient to warrant a conviction if it satisfies the trier of facts beyond a reasonable doubt. They likewise pointed out in that case that material corroboration or direct contradiction of an accomplice's testimony is entitled to great weight. They there held that supportive testimony uncontradicted was clearly sufficient to justify the jury's verdict, and so it is here. Likewise in *Wollenberg*, at page 484, it is stated that "it is also well established that the testimony of an accomplice, even though it is attended with infirmities (such as malice towards the accused, promises of leniency, etc.) and uncorroborated, is sufficient to sustain a guilty finding if it satisfies the jury beyond a reasonable doubt [citations], and that we will not disturb a conviction based thereon unless it is plainly apparent that such degree of proof is lacking." In *Wollenberg* the testimony of an accomplice was corroborated by hair taken from a cap found inside the victims' apartment and which the victims had testified their assailant was wearing. The accomplice had testified that defendant Wollenberg had just such a cap. The corroborating testimony in the case here is sufficiently overwhelmingly to completely sabotage any possible doubt about trustworthiness of the Lamar testimony.

*Wollenberg* was reaffirmed in *People v. Hudson*, 46 Ill.2d 177, 263 N.E.2d 473, and it was there pointed out that the jury was well aware of the accomplice's conviction, his former use of narcotics and the fact that he had been promised leniency. The jury was fully informed of those circumstances and nevertheless believed the accomplice's testimony. A like situation exists here where the jury were fully informed by testimony as to what happened and where undisputed corroborative testimony furnishes a solid foundation for the testimony of the accomplice or accomplices.

Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

TRAPP and SIMKINS, JJ., concur.

## SUPPLEMENTAL OPINION ON DENIAL OF PETITION FOR REHEARING

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

■■ In his petition for rehearing, the defendant contends that he did not receive a fair trial because his codefendants who afterwards became witnesses against him participated in the selection of the first 9 jurors. No specific authority is cited nor do we perceive from this record any possible prejudice to the defendant. A severance or a mistrial or a retrial would present to a newly chosen jury the same basic and fundamental knowledge that it had in this case. In *People v. Pulaski*, 15 Ill.2d 291, 155 N.E.2d 29, two defendants were tried by the jury and at the same time a codefendant waived a jury trial and was ultimately convicted by the trial judge. The defendant contended that such a joint trial violated due process in that it was irregular, tended to prejudice the jury by their knowledge that one of the defendants waived a jury trial, and that the judge had a broader latitude in receiving evidence, in interrogating witnesses and then commenting upon the evidence in a bench trial. As pointed out in that case, there is no showing of antagonistic defenses or that the circumstances involved would deny one or more defendants a fair trial nor just how the defendant would be prejudiced. All 12 jurors were of this defendant's own choice albeit 9 had likewise been approved by his codefendants. On the record here presented, we see no abuse of discretion in denying the severance, refusing to withdraw a juror and declare a mistrial, or in denying the motion for new trial.

Accordingly, we adhere to our original opinion in this case.

TRAPP and SIMKINS, JJ., concur.