(Nos. 45631, 45633 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. NORBERT JONES *et al.*, Appellants.

*Opinion filed March 24, 1975.*

Stephen P. Hurley and Robert E. Farrell, Deputy Defenders, Office of State Appellate Defender, of Mt. Vernon, for appellants.

William J. Scott, Attorney General, of Springfield, and Robert H. Rice, State's Attorney, of Belleville (James B. Zagel, Jayne A. Carr and Robert E. Davy, Assistant Attorneys General, all of Chicago, of counsel), for the People.

MR. JUSTICE DAVIS delivered the opinion of the court:

The defendants were tried by a jury in the circuit court of St. Clair County on charges of rape and aggravated kidnapping. They entered a not guilty plea, and on trial the jury returned a general verdict of guilty. Sentences of 50 to 100 years in the Illinois penitentiary system were imposed. The appellate court affirmed the

convictions and modified the sentences to 8 to 25 years. (6 Ill. App. 3d 669.) We granted leave to appeal.

The prosecutrix, who was 13 years of age at the time of the crime, was walking home with her 7-year-old sister at about 10 o'clock in the evening. A gold-colored Oldsmobile containing four black males approached the girls on Audubon Avenue near 23rd Street in East St. Louis, Illinois, and some of the occupants left the car and asked the girls for money. The girls replied that they did not have any money, continued walking on 23rd Street toward their home, and the black males returned to the car and drove off. The Oldsmobile apparently only went around the block in that it returned shortly and the occupants succeeded in getting the prosecutrix into their car. Her younger sister ran away. The prosecutrix testified that while being forced into the car she was crying and screaming and was repeatedly struck in and hit about the face; that while screaming and resisting, she was then taken to and forced to go into a vacant unlighted house, where she claims that all four occupants of the car, and another male who was at the house, had intercourse with her against her will. She was left in the house by her attackers, and she then made her way to the street where a black woman picked her up and gave her a ride home. The attendant facts, which are set forth more fully in the appellate opinion (6 Ill. App. 3d 669) are adopted herein. We will refer to other facts in the record only as necessary to discuss the issues raised.

Doctor West was called as a witness by the State. He testified that he examined the complaining witness on March 9 or 10, 1970; that she then related that she had never had sexual intercourse before the incident in question; that she had been picked up and taken to a house in East St. Louis; that she was nervous, upset and frightened; that he found evidence of bruises in the outer vaginal area and of tearing in the lining of the vagina; that she was tender upon pressure; that the indications were

that she had been penetrated and did not have a normal type of intercourse, and that a vaginal smear showed sperm, plus gonorrheal germs. He further testified that his findings were consistent with a person having gonorrhea depositing the germs at the time of the alleged rape.

The defendants make the following charges of error in this appeal: that they were denied the right to a fair and impartial trial; that they were not proved guilty beyond a reasonable doubt; that a general verdict of guilty is insufficient; that the jury was improperly instructed concerning the elements of the alleged offense, and that the sentences imposed are excessive.

They set forth three grounds in support of the contention that they were denied a fair and impartial trial. First, that it was error to allow testimony that Wilford Jones allegedly suffered from a venereal disease; however, the doctor who examined the prosecutrix shortly after her return home testified that she had been infected with gonorrheal germs. An initial objection to the questioning of the doctor about this matter was sustained, but the ruling was reversed on the prosecutor's assurance that he would connect it up. The State then, through the testimony of Officer Russell, introduced admissions allegedly made by Wilford Jones, that he did have a venereal disease. The questioning went as follows:

"Q. Now then, did you then have a discussion with either Wilford Jones or Norbert Jones to determine whether or not either one of those individuals had a social disease at the time?

Mr. Hoban: Object. It is immaterial.

The Court: Overruled.

The Witness: A. At the time of arrest and after the subjects had been advised of their rights, I am talking about Wilford and Norbert Jones had been advised of their rights, and talking to them privately, I was told by Wilford Jones that he did have some problem, sex problem. We had asked these questions in general discussion to try to help the victim, if at all possible. That was our motive, not to try to get them to incriminate

themselves. Wilford Jones told me he had contracted some form of disease while in Asia ***."

The identity of the attacker is certainly a material issue to a charge of rape, and we find that the evidence complained of was relevant to the issue of identity. As to the inquiry of the doctor of whether the prosecutrix was infected with gonorrheal germs, such a question was proper, assuming the prosecutor will eventually put on some evidence that one of the defendants suffered from the disease. A more substantial question arises concerning the sufficiency of the testimony of Officer Russell to support the doctor's testimony.

It should be noted that there is apparently no *Miranda* problem here. The defendant Wilford Jones neither denies that he was read his *Miranda* rights nor that he did not ask to see an attorney. The testimony of Officer Russell is the sole direct evidence that Wilford Jones had a venereal disease: that Wilford Jones had admitted such circumstance to him. The defendant urges that there was no corroborating evidence of this factual circumstance. However, we believe that the testimony of Dr. West furnished sufficient foundation for admission into evidence of Wilford Jones's statement to Officer Russell; and we hold that the State is correct in its contention that the evidentiary question here is one of weight rather than one of admissibility. We note that the evidence against the defendant Wilford Jones on the point was not conclusive.

The defendants next claim that the prosecution was allowed improper latitude in the cross-examination of a defense witness, James Harley. Harley was originally subpoenaed by the State, but was not called by it as one of its witnesses. The direct examination by the defendants included testimony that Harley had been arrested and charged as an accomplice, had been kept in jail for 2 or 3 days, and had then been released. The defendants complain that the prosecutor's sole purpose in cross-examination was to discredit and impeach the testimony of the

witness. We find no impropriety in such purpose.

The defendants also complain of improper latitude being allowed by the court in the cross-examination of defense witness James Harley with reference to his acquaintance with the defendants. The defense counsel, on direct examination, inquired as to whether Harley knew the defendants. It was then proper on cross-examination for the State to inquire concerning his relationship, if any, with either of the defendants. The possible bias of a witness is always material, and relationship to a defendant is clearly a possible basis for bias. The cross-examination brought out that Harley was a cousin of Norbert Jones. We have examined the record, and those questions which were alleged to be "abusive, argumentative and humiliating" were not improper in and of themselves, and in any event they were asked with reference to the areas of interrogation opened up on direct examination. Great discretion lies with the trial court in controlling the scope of cross-examination (*People v. Halteman* (1957), 10 Ill.2d 74, 86), and we find no abuse of that discretion here.

The defendants also allege error which denied them a fair trial in that the trial court admitted in evidence the testimony of Officer Manuel Farmer, a fingerprint technician for the East St. Louis Police Department. He testified to the lifting of a latent fingerprint from a wine bottle found in the room in which the prosecutrix had been raped. He determined that the fingerprint was that of Wilford Jones. He also testified that there was no scientific method of determining how long such print may have been on the bottle before it was discovered. It had previously been established by the testimony of other witnesses that Wilford Jones and his mother had formerly lived in the house where the incident took place. The defendants claim that the State did not lay a proper foundation for admittance of the fingerprint into evidence. At the trial, the defense counsel objected to Farmer's testimony only on the specific ground that his name did not appear on the

prosecution's witness list. Thus, their present argument of no proper foundation stands waived, since on appeal an objection on a specific ground at trial waives any objection to that evidence on other grounds. *People v. Queen* (1974), 56 Ill.2d 560, 564.

On the issue of the admissibility of the wine bottle in evidence, the defendants relied on *People v. Reno* (1927), 324 Ill. 484, to support their claim of insufficient foundation. Their reliance is misplaced. In *Reno* a double murder was committed in an apartment. A bullet was eventually found in the wall of the apartment and was introduced at trial. The court ruled that the bullet should not have been introduced because there was absolutely no evidence to connect it with the murders. Here, however, there is other evidence to connect Wilford Jones to the wine bottle. The identification by the prosecutrix is direct evidence, and there is other evidence which placed him in the car when the prosecutrix was abducted. The argument made here goes to the weight of the evidence, not to its admissibility, and we further note that this evidence could not have been of great help to the State because the evidence in the case conclusively established that Wilford Jones had previously lived in the house with his mother, who owned it.

The defendants next claim that they were not proved guilty beyond a reasonable doubt. They attempt to establish this proposition by a painstaking comparison of certain prosecution testimony. The frailty of this argument is that it is well settled that a reviewing court in Illinois will not substitute its judgment for that of the finder of fact on questions involving the weight of the evidence or the credibility of the witnesses, and we will not reverse a criminal conviction unless the evidence is such as to raise a reasonable doubt of guilt, and such is not the circumstance in this case. The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstance as would

permit a positive identification to be made. *People v. Stringer* (1972), 52 Ill.2d 564, 568.

In the case at bar, the identification of the prosecutrix is corroborated in many respects by the testimony of her sister, Officer Henderson, and certain exhibits offered in evidence, as well as by the testimony of certain of the defendants' witnesses.

The defendants attack the prosecutrix's identification testimony on two grounds: first, as to her general ability to accurately describe the events of the evening; and second, the procedures used at the lineup. We will discuss the second aspect first, for if the lineup identification was untainted, any other inconsistencies would bear only on the finder of fact in making its decision, and would not alone serve to overturn the conviction.

The lineup consisted of five black males, the defendants here being numbers 1 and 3. The defendants testified that they could hear those viewing the lineup although they were unable to see them, and that the prosecutrix could not identify the defendants until told by the police to concentrate on numbers 1 and 3. This testimony was refuted by those officers present and the prosecutrix. Therefore, we have here the common occurrence of a jury being forced to decide which witness to believe, and, in the case at bar, it chose not to believe the defendants. We, therefore, cannot say that the defendants were not proved guilty beyond a reasonable doubt. In this case the jury determined the weight of the evidence and the credibility of the witnesses, and we will not substitute our judgment for that of the jury on these questions. *People v. Stringer* (1972), 52 Ill.2d 564, 568.

The defendants, citing *Williams v. North Carolina* (1942), 317 U.S. 287, 87 L. Ed. 279, 63 S. Ct. 207, next argue that the return of a general verdict of guilty was error. This argument must fail for two basic reasons. First, *Williams* is not applicable to this case. *Williams* involved a charge of bigamous cohabitation and the charges could

have rested on either of two theories. The court found that a finding of guilt on one of the theories would have deprived the defendants of a constitutional right; and that the convictions had to be reversed because it was impossible to know on which theory the convictions were based. The reason for this approach in *Williams* was that one theory was invalid. Here there was no failure to prove either of the counts by proper means, and no attack was made upon the constitutionality of either the rape or kidnapping statutes, and the general verdict of guilty results in no prejudice to the defendants. This point has been raised before in Illinois, and it is the rule in this State that "where an indictment contains several counts arising out of a single transaction, and a general verdict is returned, the effect is that the defendant is guilty as charged in each count, and if the punishment imposed·is one which is authorized to be inflicted for the offense charged in any one or more of the counts, the verdict must be sustained." (*People v. Lymore* (1962), 25 Ill.2d 305, 308.) We also note that no objection was made to the forms of verdict used, nor was any other form submitted by the defendants, that being sufficient reason, in the absence of plain error, to waive the issue. *People v. Green* (1963), 27 Ill.2d 39, 44.

The defendants next argue that their convictions must be reversed because the jury was improperly instructed in that the instructions did not explicitly require that the jury find that certain specific acts were committed, but also that the defendants were the persons who committed them.

This could have been accomplished by the giving of Illinois Pattern Jury Instructions, Criminal Nos. 8.05 and 9.03. The manner of instructing which is written into IPI-Criminal is that each offense is defined twice. The first definition is general in nature, but does contain all of the elements of the crime. The second instruction, referred to as the "issue" instruction, differs from the first as a matter

of form, not substance. The so-called "issue" instructions set forth the facts to be found to establish guilt in a check-list type form in order to avoid any possible confusion. Here only the general instructions were given, without, however, objection from the defendants. When the record, as in the case at bar, does not indicate that the defendants interposed any objections to the instructions at the trial, they cannot ordinarily complain of certain instructions on review. (*People v. Green* (1963), 27 Ill.2d 39, 44.) Inasmuch as there was no omission of substance in the given instructions, and no request by the defendants that the court give "issue" instructions, we do not deem the failure to give the "issue" instructions in this instance to be prejudicial error.

Finally, the defendants argue that the sentences imposed are excessive. The trial court imposed sentences of 50 to 100 years, which were reduced to 8 to 25 years by the appellate court. Since the date of sentence and first review of this case, the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1001—1—1 *et seq.*) has become law. We have held that if sentences under the Unified Code of Corrections are less than under prior law, the limitations of the Code apply to cases pending upon direct appeal. *People ex rel. Weaver v. Longo* (1974), 57 Ill.2d 67; *People v. Chupich* (1973), 53 Ill.2d 572, 584; *People v. Harvey* (1973), 53 Ill.2d 585, 589.

However, the Code is only to be applied if it provides for a more lenient penalty than did the statute under which the sentence was imposed. (*People v. Lilly* (1974), 56 Ill.2d 493.) Here there is no substantive difference between the protections afforded by the Code and those afforded by statute at the time the defendants were sentenced.

The defendants here argue that without detailed and specific findings concerning the history and character of the defendants, both the trial and appellate courts have erred in setting the minimum sentence in excess of 4 years.

Section 5—3—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—3—1) provides:

"A defendant shall not be sentenced before a written presentence report of investigation is presented to and considered by the court where the defendant is convicted of a felony. The defendant may waive the presentence investigation and written report.

The court may order a presentence investigation of any defendant."

At the time of the defendants' trial, the applicable statute was section 1—7(g) of the Criminal Code of 1961 (Ill. Rev. Stat. 1969, ch. 38, par. 1—7(g)), which provided:

"(g) Mitigation and Aggravation.

For the purpose of determining sentence to be imposed, the court shall, after conviction, consider the evidence, if any, received upon the trial and shall also hear and receive evidence, if any, as to the moral character, life, family, occupation and criminal record of the offender and may consider such evidence in aggravation or mitigation of the offense."

This court has held that this provision could be waived. (*People v. Nelson* (1968), 41 Ill.2d 364.) It therefore appears that the Code does not afford more protection than did the previous statute, and *People v. Lilly* is applicable to avoid reversal on this ground.

The sole remaining argument is that the record does not reflect a reason for imposing a minimum sentence of more than 4 years, inasmuch as these crimes are Class 1 felonies under the Code of Corrections. The defendants urge that the record does not reflect the reason for the higher minimum; however, we would point out that the defendants were both convicted of two Class 1 felonies, rape and aggravated kidnapping, as well as the fact that the prosecutrix was struck and beaten during the kidnapping and rape. We find that these circumstances sufficiently support the higher minimum sentences.

Section 5—8—1(c)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(2)) provides:

"(2) for a Class 1 felony, the minimum term shall be 4 years unless the court, *having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term.*" (Emphasis ours.)

We hold that the trial court "having regard to the nature and circumstances of the offense and the history and character of the defendant[s]," would have been authorized to impose the sentence in question had the Unified Code been in effect. Accordingly, the appellate court, under Supreme Court Rule 615(b)(4), was authorized to modify the sentence in the manner in which it did. The judgment of the appellate court is affirmed.

*Judgment affirmed.*