THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PAUL LEEMON, SR., Defendant-Appellant.

(No. 12562;

Fourth District—May 22, 1975.

Michael W. Hogan, of Lansing, Michigan, for appellant.

William H. Knuppel, State's Attorney, of Havana (G. Michael Prall, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Defendant Paul Leemon, Sr. was charged in the Circuit Court of Mason County in a two-count indictment with the offenses of conspiracy to commit the burglary of, and the burglary of, the Mabel Kramer residence in that county on July 1, 1973. After a trial by jury he was found guilty of the conspiracy charge and not guilty as to the burglary charge and sentenced to 3-10 years' imprisonment. He appeals.

Defendant's nephews Donald McCloud and Richard McCloud were apprehended in a field near the Kramer house on July 1, 1973, and have each pleaded guilty to the burglary. At the time of the trial, Richard had received a 3-5 year sentence, and Donald was awaiting sentencing. Defendant does not contest the sufficiency of the evidence to prove that the burglary was committed but maintains that the evidence was insufficient to prove beyond a reasonable doubt that he was guilty of a conspiracy to commit the burglary.

Donald McCloud was the principal witness for the People. He testified that he, his brother Richard, and the defendant met at the latter's house in Peoria a few days prior to the burglary, that they discussed information which they had concerning the presence of money in the Kramer residence, and that they decided to commit the burglary. He stated that early in the morning of July 1, 1973, he met his brother and the defendant at the Deluxe Cafe in Peoria and that they rode from there to Mason County with the defendant driving. This car belonged to Donald's employer and Donald had permission to use it. He further stated that upon arrival at the Kramer residence defendant got out of the car and knocked

on the door. Since there was no one home, he and his brother Richard entered the house, but the defendant left with the understanding that the defendant would pick them up in 15 minutes two blocks away. Donald's testimony was somewhat corroborated by his wife who testified, without objection, that at about 6 P.M. on the date in question defendant's son brought Donald's car back to her, handed her the keys, and stated that defendant had told him to return the car.

Richard McCloud also testified for the State. His testimony was that the car in question was a demonstrator borrowed from the place where his brother worked, that he, Donald, and a third person drove down to Mason County from Peoria, but that he could not remember who the other person was. On cross-examination he stated that he had never seen the third person before and that the third person could not have been the defendant because "I've never stole with him." None of the other evidence presented in the People's case in chief bore upon the involvement of the defendant.

Defendant testified that on the morning in question he took Richard to meet Donald at the Deluxe Cafe and had coffee with them but returned home. He then woke his son, Paul, Jr. and asked him to help complete some carpentry work at the residence of some people named Nolanburg. Defendant said that he left before his son arose. He said that while at Nolanburg's he had a conversation with Harriet Renigar and that he saw a Mr. Schaffer at his home near the Nolanburg residence. He also said that while he was in a phone booth near the Nolanburg residence, he waved to Charles Waller who was driving by. Defendant testified that he had had arguments with Donald McCloud about money owed to defendant's wife. Donald had denied that such arguments occurred. Defendant admitted that he had been convicted of burglary in Tazewell County in 1966.

Defendant's wife testified that defendant left home about 8 A.M. on July 1, 1973, and returned home at approximately 1 o'clock for lunch. She further stated that he called her twice during the period to awaken Paul, Jr. and that Paul, Jr. finally left at about 11. Paul, Jr. testified that on the morning in question he got up at 10:30 and went to help his father at the Nolanburg residence. He stated that after completing the job the two returned home at approximately 1:30 in the afternoon. He stated that he picked up Donald McCloud's car at 6 after receiving an anonymous call and drove it to the McCloud residence.

Charles Waller testified that about 10:30 in the morning of that day he saw defendant at a phone booth in Peoria and honked at him. On cross-examination Waller admitted that shortly before the trial he talked with the defendant, that he had first recalled the time this occurred in a

conversation he had with the defendant shortly before the trial, but that he remembered the day because he was going to his mother's house to discuss plans for the 4th of July. Helen Renigar was not called as a witness, and George Schaffer testified that he was not at home on the day in question.

The Criminal Code of 1961 provides in part:

> "Elements of the offense. A person commits conspiracy when, with intent that an offense be committed, he agrees with another to the commission of that offense. No person may be convicted of conspiracy to commit an offense unless an act in furtherance of such agreement is alleged and proved to have been committed by him or by a co-conspirator." Ill. Rev. Stat. 1973, ch. 38, par. 8—2(a).

■■ The only substantive evidence that defendant agreed to the commission of the burglary is the testimony of Donald McCloud, an accomplice. The uncorroborated testimony of such a witness is received with caution but, if strong enough, is sufficient to sustain a conviction (*People v. Mentola*, 47 Ill.2d 579, 268 N.E.2d 8; *People v. Burnett*, 13 Ill.App.3d 931, 301 N.E.2d 600). This is true even though his testimony is colored by either expectations of leniency (*People v. Nettles*, 107 Ill.App.2d 143, 246 N.E.2d 29) or malice towards the accused. *People v. Wollenberg*, 37 Ill.2d 480, 229 N.E.2d 490.

■■ Here, most evidence contrary to the testimony of the accomplice is subject to infirmity. The defendant's testimony was contradicted by George Schaffer and weakened by Charles Waller's admission that he first had reason to remember the day of the occurrence only shortly before the trial. Richard McCloud's testimony was rendered uncertain by his inability to remember who the third person was and by his failure to state when he and Donald left the company of defendant who admitted he was with them at the Deluxe Cafe in Peoria on the morning of the burglary. The evidence was, therefore, sufficient for the jury to have believed beyond a reasonable doubt that the defendant was guilty.

Defendant next contends that the court should have granted his pretrial motions to dismiss the conspiracy count. These motions were made on the theory that the inchoate offense of conspiracy to commit burglary would merge into the burglary if that offense was actually committed. There is no merit to this argument. Section 8—5 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 8—5) provides that:

> "No person shall be convicted of both the inchoate and the principal offense."

The Committee Comments to that section state:

> "* * * By virtue of the definition of 'conviction,' *this means that prosecution may be had for both offenses in the same trial (by*

*separate counts*) or separately. But after proceeding finally to verdict of guilty on one or both, the judgment of conviction and sentence shall be entered on only one offense." (Emphasis added.) (Ill. Ann. Stat. ch. 38, § 8—5, Committee Comments (Smith-Hurd 1972).)

This rule has been followed in *People v. Brouilette*, 92 Ill.App.2d 168, 236 N.E.2d 12, and *People v. DeStefano*, 85 Ill.App.2d 274, 229 N.E.2d 325. This was also the rule prior to the Criminal Code of 1961 (*People v. Robertson*, 284 Ill. 620, 120 N.E. 539).

■■ In the case under consideration the court did not give the jury any opportunity to find defendant guilty of both the burglary and the conspiracy. Without objection by defendant or his tender of any forms of verdict, the court submitted forms of verdicts to the jury that would allow them to find defendant either not guilty of all charges, guilty of burglary but not guilty of conspiracy, or guilty of conspiracy but not guilty of burglary. Defendant contends, nevertheless, that the conviction should be reversed because verdicts finding him guilty of conspiracy but not guilty of burglary were inconsistent. Defendant has waived this issue, however, because of his failure to object to the forms of verdict (*People v. Jones*, 60 Ill.2d 300, 325 N.E.2d 601). Furthermore, since the charge of conspiracy involved elements different from those of burglary, the verdicts, although logically inconsistent under the proof, were not inconsistent at law and would not give rise to reversal. *People v. Hairston*, 46 Ill.2d 348, 263 N.E.2d 840.

Defendant also complains of two alleged improprieties which he raised for the first time in the post-trial motion. These charges are not supported by affidavit. One is that a juror was allowed to leave the courthouse during a recess. The record does not indicate that the jury had been sequestered at that time. The other charge is that during a recess, the State's attorney had a conversation with a defense witness. Defense counsel admitted that he had no evidence to support his allegation. Clearly no error was committed with regard to these two allegations.

The judgment is affirmed.

Affirmed.

TRAPP, P. J., and CRAVEN, J., concur.