THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
J. C. THOMAS, Defendant-Appellant.

First District (5th Division)    No. 78-177

Opinion filed April 27, 1979.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ellen Dienes, and Bruce Brandwein, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Following a jury trial, defendant was convicted of murder, two counts of aggravated kidnapping, and attempt armed robbery, (Ill. Rev. Stat. 1975, ch. 38, pars. 9—1, 10—2, 8—4 and 18—2.) He was sentenced to concurrent prison terms of 50 to 75 years for murder, 50 to 75 years for each count of aggravated kidnapping, and 6 to 20 years for attempt armed robbery. On appeal, defendant contends that: (1) the evidence was insufficient to establish defendant's guilt beyond a reasonable doubt; (2) he is entitled to a new trial since evidence of defendant's alleged flight from police at the time of his arrest in another jurisdiction was improperly admitted; and (3) the trial court erred in giving the jury an accountability instruction. We affirm the trial court. The following evidence was adduced at trial:

Marvin Westley, a witness for the State, testified that on the evening of October 26, 1975, he left home in his father's car, picked up his girlfriend, Darice Cooley, at her home and thereafter proceeded to a self-service car wash at 77th and State Street in Chicago. Upon arriving, they pulled into one of the stalls, got out of the car, and, as Westley searched his pockets for the correct change for the washing machine, two men entered the stall and announced a holdup. Westley identified defendant at trial as the man with the gun and Stephen Cochran as the other man.

Westley stated that defendant ordered him and Cooley to step away

from the car with their hands up. Cochran then told them to put their hands down and act as though they were washing the car. Defendant told Cochran to hold the gun as he proceeded to search Westley. Defendant took a wallet from Westley's pocket, but upon finding no money in it, threw it to the ground. After an unsuccessful search of Cooley's purse, defendant threw it to the ground also. Defendant then seized the car keys, opened the trunk and ordered Westley to get in. After he had gotten into the trunk, the trunk was closed and the car pulled off and drove for approximately 4 or 5 minutes when it made a sudden stop. Westley asked if Cooley was all right and he heard a woman's voice respond affirmatively. Shortly thereafter, the car stopped again and it appeared to Westley that everyone was getting out. He heard both doors open and the back seat lift up. He then observed two men walking away from the car through an opening he had created with a jackhandle. He identified these men as defendant and Cochran. As they came back towards the car, Westley noticed that defendant was walking on the driver's side and Cochran was walking on the passenger's side. As they approached the car, Westley shouted to them to let him out because he could not breathe. He then heard 5 or 6 gunshots coming from the direction of the driver's side of the car and heard defendant and Cochran run away.

Westley further testified that shortly thereafter the police and fire department arrived, released him from the trunk and took him to the hospital for treatment. From there, he was taken to the police station where he viewed mug shots but could not identify anyone then nor on two subsequent occasions. Westley recalled that on December 23, 1975, he went to the police station to view a lineup whereupon he identified Cochran as one of the individuals involved in the incident. He returned the following day to view additional photographs; at this time he identified defendant as the other individual involved.

On cross-examination, Westley testified that the shorter of the two men had the gun when they entered the stall at the car wash, conducted the searches and ordered him into the trunk. Westley stated that during the time he viewed the two men from the trunk he could only maintain a partial view of their faces and that he did not see Cooley when she was shot.

Officer William Howell, testifying on behalf of the State, stated that on the evening of October 26, 1975, he and his partner responded to a call of shots fired in the alley at 6716 S. Prairie in Chicago. As the squad car entered the alley, Howell observed a parked car and discovered the body of a young girl approximately two feet away. He then noticed that the trunk was moving and that a jackhandle was extended outward apparently by someone inside the trunk. Howell called for an ambulance and other assistance. Upon arrival, the girl was taken to the hospital and

Westley was taken out of the trunk. Howell stated that Westley was bleeding heavily, and perspiring and appeared to be very shaken. Westley was then taken to the hospital.

Sergeant James Scott testified that in the early morning hours on October 27, 1975, he displayed mug shots to Westley at the police station but that he had to terminate the session because Westley appeared to be quite upset. Scott conducted an additional session the following day, however, Westley still could not make an identification. He stated that on December 20, 1975, Westley was shown five photographs. Westley identified one of the photographs as being that of defendant and said that defendant was the person who abducted him and Cooley and had shot Cooley. Westley viewed additional photographs, one of which was a photograph of Stephen Cochran, and he tentatively identified Cochran as the other person who was with defendant. Scott further testified that on December 23, 1975, he arrested Cochran for the purpose of placing him in a lineup and that Westley viewed the lineup and made a positive identification at that time. On cross-examination, Scott testified that Westley described the individual armed with the gun as the taller of the two men and the unarmed man as the smaller of the two.

Dr. Eupil Choi, pathologist at the Cook County Medical Examiner's office, testified that he performed the autopsy on the body of Darice Cooley and found powder burns around one of the bullet wounds in the head area. He stated that the powder burns were created by a weapon fired at close range. Sergeants Scott and Donald Smith, a ballistics officer, offered similar testimony to that effect. In addition, Smith testified that he was of the opinion that the bullet retrieved from the trunk of the car and the bullet recovered from the Cook County Medical Examiner's office could have been fired from the same weapon.

Stephen Cochran, testifying on behalf of the State, admitted that he had an agreement with the State in exchange for his testimony, whereby the State would recommend a dismissal of the murder charge, a sentence of 4 to 8 years for the charge of aggravated kidnapping, and a sentence of 2 to 8 years for the charge of attempt armed robbery. He testified that he had known defendant for eight years and that he saw defendant for the first time on the day in question in a lounge at 69th and Wentworth at approximately 5 or 5:30 p.m. They left the lounge in Cochran's car and after several intermediate stops, defendant asked Cochran if he wanted to make some money; Cochran replied that he did not. At that time, they proceeded south on State Street and stopped at the 7600 block. Cochran stated that defendant suggested that they break into the coin boxes in the car wash and that he did not reply, but that when defendant got out of the car he followed him. They walked to the car wash at approximately 7700 State Street where defendant obtained change for $5 from a man washing

his car and he gave Cochran $3. Defendant then stated that he was going to break into the coin boxes and Cochran decided to return to the car. As they were walking together, they came upon a stall that was occupied by a teenage couple. Defendant entered the stall and with gun in hand announced a holdup. Cochran stated that he was not aware of the fact that defendant was in possession of a gun upon their initial arrival at the car wash. Cochran further stated that defendant searched Westley and Cooley's purse while he held the gun. Defendant then seized the car keys, opened the trunk and ordered Westley to get into it. Defendant, Cooley, and Cochran then got into the front seat of the car and defendant drove away. As they reached the 6900 block of Prairie, defendant struck a car which was double parked. He then got out and spoke with the owner of the other car for approximately 2 minutes. After returning to the car, defendant proceeded to the 6700 block and turned into an alley.

Cochran testified that defendant then got out of the car and directed Cooley to also get out. They proceeded down the alley for a distance of about 4 or 5 houses and went between two garages. Cochran followed them and discovered defendant attempting to rape Cooley. Cochran stated that he told defendant to go back to the car and let Westley out of the trunk. As he approached the car, defendant fired two or three shots into the trunk. Cooley ran towards defendant and he turned and shot her, firing one or two additional shots after she fell to the ground. At that time Cochran ran out of the alley and the next time he saw defendant was approximately one-half hour later at the lounge on 69th and Wentworth.

On cross-examination, Cochran again admitted to the agreement he had with the State in exchange for his testimony and stated that he had lied to the police on the day of his arrest when he told them that he was never in Westley's car but in fact had followed defendant in his own car and that he did not witness the shooting. Cochran further testified that the gun used during the incident looked similar to a gun he had previously sold to defendant.

Defense counsel moved to have the testimony of a State's witness, Memphis Police Officer John McNulty, excluded on the grounds that such testimony was highly prejudicial and that defendant's arrest in Memphis, Tennessee, five months later was not admissible as indicative of flight. Although agreeing that such testimony was prejudicial, the trial court denied the motion and admitted the testimony on the basis that flight was an issue relating to the state of mind of defendant.

Consequently, Officer McNulty testified that on March 20, 1976, at approximately 11 a.m., he received a radio call and thereafter proceeded to the Julius Lewis Project in Memphis where he met with F.B.I. Agent Webster who had an arrest warrant charging defendant with murder. They went to an apartment where defendant's girlfriend lived, knocked

on the door, and asked if defendant was there. A woman answered that he was not there. They asked if they could come into the apartment to look around and the woman agreed. They went to search the attic which was locked and when they inquired if they could get into the attic, the woman reluctantly relinquished the key.

McNulty stated that Webster went into the attic, but that he had to come back because it was dark and he could not see anything. After obtaining a flashlight, Webster returned. While standing on the stairway, McNulty heard a noise and noticed a body moving but could not identify the person. Then Webster shouted, "[s]top, you are under arrest," and a loud crash followed. They proceeded in the direction of the noise and came upon a hole in the floor which was situated directly over the stairway leading to the bottom floor of another apartment. McNulty radioed for assistance and a search of the area ensued. Upon receiving certain information, McNulty proceeded to an apartment in a nearby building. After several knocks at the door, it was opened by a man whom he identified as defendant. McNulty recalled that defendant was breathing and perspiring heavily and that he had fresh scratches and bruises on his arm and about the shoulder and back area. He informed defendant that he was under arrest and defendant offered no resistance.

Following the exhibits conference and the stipulations, the State rested. The defense offered no evidence. During the instructions conference, the defense counsel objected to the accountability instruction on the basis that the evidence was insufficient to warrant such an instruction. The trial court overruled the objection and the instruction was recited to the jury.

Defendant was thereafter convicted of all crimes charged and sentenced to concurrent prison terms of 50 to 75 years for murder, 50 to 75 years for each count of aggravated kidnapping, and 6 to 20 years for attempt armed robbery. Defense counsel moved for a new trial, but the motion was denied. Defendant now appeals his conviction.

Opinion

Defendant first contends that the evidence presented by the State is insufficient to establish guilt beyond a reasonable doubt. In support of this argument, defendant cites various discrepancies in the testimony of the State's witnesses, one of whom was an accomplice. Defendant further attacks the credibility of the testimony offered by the complaining witness on the grounds that his emotional state at the time of and subsequent to the incident diminished his ability to identify defendant as the actual assailant. We disagree.

It is well settled in Illinois that a reviewing court will not set aside the jury's verdict unless the evidence is so improbable as to justify a

34

reasonable doubt of defendant's guilt. (*People v. Owens* (1976), 65 Ill. 2d 83, 357 N.E.2d 465; *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) The sufficiency of eyewitness identification, the credibility of the witnesses and the weight to be given their testimony and the inferences to be drawn therefrom are matters within the province of the jury. (*People v. Jones* (1975), 60 Ill. 2d 300, 325 N.E.2d 601; *People v. Harris* (1972), 53 Ill. 2d 83, 288 N.E.2d 873.) Moreover, the testimony of one identification witness is sufficient to support a conviction if the witness observed defendant under such circumstances as would permit a positive identification to be made. *Jones*, 60 Ill. 2d 300, 307-08, 325 N.E.2d 601, 605; *People v. Stringer* (1972), 52 Ill. 2d 564, 569, 289 N.E.2d 631, 634.

In the case at bar, there are discrepancies in the testimony of Marvin Westley and Stephen Cochran with respect to certain events which occurred during the incident in question. For example, Westley testified that while confined in the trunk of the car, he heard the doors and the back seat lift up, whereas Cochran testified that everyone occupied the front seat; Westley stated that defendant gave Cochran the gun before he was searched, while according to Cochran, defendant kept the gun during this search and surrendered it only before searching Darice Cooley's purse; in addition, Westley recalled viewing defendant and Cochran, but not Cooley, through the opening in the trunk as they walked down the alley, yet Cochran claimed that in fact it was defendant and Cooley who walked down the alley and that he followed shortly thereafter. Furthermore, in describing the two men to the police after the incident, Westley referred to defendant as the taller of the two, while at trial he testified that defendant was the shorter man.

Notwithstanding the inconsistencies in the testimony of Westley and the frightening circumstances under which he viewed defendant, we think that it was reasonable for the jury to conclude that he had ample opportunity to observe defendant and that his identification of defendant was sufficient to prove guilt beyond a reasonable doubt. Defendant also argues that Cochran's testimony was unreliable, inasmuch as the witness had entered into an agreement with the State in exchange for his testimony. Although the testimony of an accomplice is necessarily received with caution, such testimony, even if uncorroborated, is sufficient to warrant a conviction if it satisfies the trier of fact beyond a reasonable doubt. (*People v. Mentola* (1971), 47 Ill. 2d 579, 583, 268 N.E.2d 8, 10; *People v. Walker* (1974), 24 Ill. App. 3d 421, 426, 321 N.E.2d 114, 118.) It is also the rule that material corroboration of an accomplice's testimony is entitled to great weight. (*People v. Sheridan* (1978), 57 Ill. App. 3d 765, 774, 373 N.E.2d 669, 675; *People v. Burnett* (1973), 13 Ill. App. 3d 931, 934, 301 N.E.2d 600, 602.) Here, the jury could properly consider the credibility of the witnesses and could weigh any

discrepancies in light of all the evidence. Therefore, considering the mutually supportive testimony of Marvin Westley and Stephen Cochran, in addition to other evidence presented at trial, we find the evidence clearly sufficient to justify the jury's verdict.

Next, defendant contends that he is entitled to a new trial since the evidence of defendant's alleged flight from police at the time of his arrest in another jurisdiction was improperly admitted. Defendant argues that the State failed to prove that he was in fact the person evading the police. In response, the State argues, and we agree, that the evidence of flight was admissible because it is evidence tending to show a consciousness of guilt on defendant's part.

In Illinois, evidence of flight has long been admissible as a circumstance from which the jury can infer, along with all other facts, a consciousness of guilt (*People v. Rossini* (1962), 25 Ill. 2d 617, 621, 185 N.E.2d 831, 833; *People v. Griffin* (1974), 23 Ill. App. 3d 461, 464, 318 N.E.2d 671, 674); and it has been held to be indicated by a defendant's leaving the State. (*People v. Pelate* (1977), 49 Ill. App. 3d 11, 18, 363 N.E.2d 860, 866; *People v. Henderson* (1976), 39 Ill. App. 3d 502, 508, 348 N.E.2d 854, 859.) Here, through the testimony of a State's witness, Memphis Police Officer John McNulty, the evidence showed that defendant was arrested on March 20, 1976, in Memphis, Tennessee, several months after the incident. Although Officer McNulty admitted that he could not positively identify defendant as the person who fled through the hole in the attic floor, it is significant that shortly thereafter he found defendant in the apartment of a nearby building, breathing and perspiring heavily, and with fresh scratches and bruises on his body. We think that in light of these facts and all other evidence, it would be reasonable for the jury to infer that defendant was the person in the attic. Inasmuch as flight is not a material element of proof, but at most an incriminating circumstance, it need not be proved beyond a reasonable doubt. (*People v. Henderson* (1976), 39 Ill. App. 3d 502, 507, 348 N.E.2d 854, 859.) Accordingly, we find no error in the admission of the evidence of defendant's flight from police.

Finally, defendant contends that the trial court erred in giving an accountability instruction because the evidence was insufficient to support such an instruction. Defendant asserts that if the evidence was sufficient to prove his guilt, it would merely show him guilty as a principal and not as an accomplice. Again, we disagree.

A person is legally accountable for the conduct of another when, "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1975, ch. 38, par. 5—2(c); *People v. Addison*

(1977), 56 Ill. App. 3d 92, 99, 371 N.E.2d 1025, 1030.) Even slight evidence upon the theory of accountability will justify the giving of an instruction. (*People v. Clifford* (1976), 38 Ill. App. 3d 915, 919, 349 N.E.2d 922, 925.) In addition, there are cases which have held that where the evidence shows that defendant was present at the crime, without disapproving or opposing it, the trier of fact may consider that conduct in connection with other circumstances and thereby conclude that such person assented to the commission of the offense, lent his countenance and approval, and thereby aided and abetted the crime. (See *People v. McConnell* (1977), 48 Ill. App. 3d 355, 362 N.E.2d 1280; *People v. Gilliam* (1974), 16 Ill. App. 3d 659, 306 N.E.2d 352.) In the instant case, both Marvin Westley and Stephen Cochran testified that defendant was armed with a gun when he entered the stall of the car wash and announced a holdup, searched Westley's wallet and Cooley's purse for money, ordered Westley to get into the trunk, and drove into the alley where the subsequent shooting of Cooley occurred. While the evidence is in dispute as to who was in possession of the gun at the time of the shooting, we are of the opinion that the circumstances surrounding the incident in their entirety support defendant's conviction on a theory of accountability. Furthermore, the fact that defendant might have been guilty of direct participation in the crime does not render the accountability instruction improper if there is also sufficient evidence that he aided another in the commission of the crime. (*People v. Addison* (1977), 56 Ill. App. 3d 92, 99, 371 N.E.2d 1025, 1030; *People v. Clifford* (1976), 38 Ill. App. 3d 915, 919, 349 N.E.2d 922, 925.) Since we have found that there was sufficient evidence to warrant a finding that defendant could be held accountable for the actions of another, the trial court did not err in giving the instruction.

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

LORENZ and MEJDA, JJ., concur.