(No. 36624.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALMERIGO LUCIANO ROSSINI, Plaintiff in Error.

*Opinion filed Sept. 28, 1962.—Rehearing denied Nov. 29, 1962.*

BELLOWS, BELLOWS & MAGIDSON, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and WILLIAM J. BAUER, State's Attorney, of Wheaton, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Defendant was indicted for the murder of Ronald Watt. He was tried by a jury, found guilty of murder, and sentenced to the penitentiary for a term of 50 years. On this writ of error he contends that he was not proved guilty beyond all reasonable doubt, that the court erred in limiting the cross-examination of certain of the People's witnesses, and that he was deprived of a fair trial by certain remarks of the prosecutor.

It is undisputed that Watt died as a result of a knife wound inflicted by the defendant. The defendant contends, however, that the killing was in self-defense.

Defendant, an eighteen-year-old boy, and one Gabor Czegeny met two sisters, Janet and Carol Carlquist, on April 15, 1960. Defendant made a date with Janet to take her to a dance the next evening. Defendant and Gabor picked up Janet and another girl, Judy Davidson, and took them to a dance at the Villa Park V.F.W. Hall. After they had been at the dance for about two hours, defendant twice asked the girls if they wanted to go home. The girls refused. Defendant and Gabor left the dance hall at 10:30 P.M. and drove off. Later they decided to drive to Janet's house and wait till she got home. Defendant's testimony was that he wanted to tell Janet that he would not see her any more. Czegeny testified that defendant said he wanted to tell Janet off and said "If there are some boys bringing her home and they start something I will fight them." In any event the two drove to Janet's house and parked in front.

After defendant had left the dance hall, Ronald Watt and four other boys came. Watt asked to take Janet and Judy home, and the girls left with them. Judy was taken home, and they drove to the Carlquist home, where they parked in the driveway. When the Watt car arrived in the driveway, defendant and Czegeny left their car and walked over to Watt's car after first, according to Czegeny's testimony, pulling up their car to block the driveway. Defend-

ant had a knife in his possesion. Thereafter the events occurred resulting in Watt's death. On these the testimony conflicts.

Among the witnesses for the People were Janet Carlquist, Ronald Napier, James Zandlo, Michael Smith, and Richard Stern, who were occupant's of Watt's car, and Gabor Czegeny, who was defendant's companion. Janet testified that they pulled into the driveway and all of a sudden the car door swung open and defendant punched Watt in the stomach. She admitted that at the coroner's inquest she testified she did not see Rossini swing at the deceased's stomach and that she only saw him fall.

Napier testified that when Watt opened the door, he was hit in the stomach; that he got out immediately after Watt and hit defendant, Rossini, in the face; and after he hit Rossini he heard Watt say, "this kid's got a knife," and then he saw the knife in defendant's hand. Napier grabbed Rossini's right arm and while they were struggling Napier was cut.

Zandlo testified he didn't see what took place because Stern got out the right side and he followed him, both chasing the boy they saw on the right side of the car.

Michael Smith testified that when they pulled into the driveway two boys came up, one on each side, and there was a tap on the driver's side. Watt said, "what's going on there?" and he started to get out. Napier got out after Watt and Smith followed. When Smith got out, he saw Watt curled up against the side of the car moaning, with his hands on his side. Napier was on his back on the ground and Rossini was on top of him. Smith grabbed Rossini's arms and Rossini struck him in the side so that as a result his spleen had to be removed. On cross-examination, he testified he did not see what Watt did immediately after getting out of the car.

Richard Stern testified he heard a rattle, saw the car

door open and saw someone outside. Watt got out and the person on the outside took a swing at him. Later, he saw Rossini with a knife.

Gabor Czegeny testified for the prosecution that when they left the dance, Rossini said he was pretty mad that the girls didn't go with him. He wanted to go back and talk to them. Rossini said he wanted to talk to Janet and tell her off. He said, "If there are some boys bringing her home and they start something I will fight them." He stated that when he got to the right side of Watt's car one of the boys came out swinging at him and Czegeny ran away. He testified on cross-examination that when Rossini and he got out of the car, Rossini did not have a knife in his hand.

Defendant testified that he went to the Carlquist home to tell Janet he would not be able to see her anymore; that when he walked up to the car the door opened and he was struck and kicked in the back. When he went down on his knees, he pulled out his knife and swung it to keep the assailants from him. He knew he had hit somebody when he left the Carlquist home. He called his parents in the morning and learned that Watt had died. He became scared and ran away to Texas.

We are unable to agree with defendant's contention that the evidence was insufficient to support the finding of guilt. The People's evidence clearly showed that the defendant was the aggressor, that he assaulted Watt without provocation, and inflicted the fatal wound. This evidence was sufficient to sustain the conviction of murder. The jury was not obliged to reject the People's evidence and to believe the testimony of the defendant. However, even the testimony of the defendant himself does not make out a convincing claim of self-defense. His own testimony shows that, while armed with a knife, late at night, at a place where his right to be was at least questionable, he engaged in conduct under such circumstances as might reasonably be expected to have provoked an altercation. His

claim of self-defense under these circumstances is not convincing. Furthermore, his flight from the State is a circumstance that may be considered with other evidence as tending to prove guilt. (*People* v. *Lobb,* 17 Ill.2d 287; *People* v. *Dukes,* 12 Ill.2d 334.) The jury was warranted in finding him guilty of murder.

Next the defendant contends that the trial court unduly limited the cross-examination of witnesses for the People and thereby deprived the defendant of a fair and impartial trial. This point was not specifically raised in defendant's written motion for a new trial and it is doubtful if it has been properly preserved for review. Since the People have not raised any particular question at this point and since there were some other points in the motion for a new trial which might inferentially be construed as raising this point, we have considered the question as though it had been properly preserved for review. Defendant's chief complaint in this regard concerns the failure of the trial judge to permit him to show, by cross-examination of People's witnesses, Napier and Stern, who testified at the trial that they saw defendant strike Watt in the stomach as Watt got out of the car, that they had not testified to this at the coroner's inquest. An examination of the record discloses that many of the questions to which the court sustained objections were in improper form and that an objection might well have been sustained for this reason, that when questions in unquestionably proper form were asked, either no objection was made or the objection was overruled, and that a large portion of the impeaching evidence that the defendant hoped to disclose in this manner was in fact disclosed. Under these circumstances, we are of the opinion that any technical error in the trial court's rulings was minor and did not result in prejudice to the defendant.

Czegeny, defendant's companion on the night in question, had testified for the People on direct examination that defendant was mad because the two girls refused to be

taken home. On cross-examination he admitted that he had made a statement five days after the incident that defendant was not mad because the girls had refused to go home with him. Defendant contends that the trial court erred in limiting cross-examination as to when the witness changed his story. Defendant's point is not well taken since he was in fact permitted by the court to bring out that the witness first told a different story six or seven days before he testified at the trial.

Defendant contends that certain remarks of the prosecutor deprived him of a fair trial. The allegedly prejudicial remarks occurred in exchanges between counsel during the cross-examination of witnesses. We have examined the remarks complained of in the light of the entire record and find no more than might reasonably be expected in any contested trial, nor do we see how these remarks could have resulted in prejudice to the defendant.

Finally, it is contended that the trial court erred in refusing to permit the defendant to testify as to the reason of his presence at the place of the homicide. An examination of the record reveals that the defendant was able to get the relevant testimony of this nature before the jury. We find no prejudicial error.

The judgment of the circuit court of Du Page County is affirmed.

*Judgment affirmed.*