THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL DOWDY, Defendant-Appellant.

Second District   No. 2—83—1029

Opinion filed January 27, 1986.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellant.

Robert J. Morrow, State's Attorney, of Geneva (Patrick Delfino and Marshall Stevens, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant was convicted of forgery by a jury in Kane County on September 27, 1983. He was sentenced to 30-months probation and, as a condition thereof, 180 days in the Kane County jail. Sentence was later modified to reflect credit for time served.

The defendant was charged with the intent to defraud the Bank of Sugar Grove on June 3, 1983, by knowingly delivering to it a check in the amount of $300 drawn on the joint account of Addie and Lloyd Roberts. The only name printed on the check was "Addie Roberts" and, although she was deceased in 1981, Lloyd Roberts was an authorized signator and at the bank's suggestion, he continued to use the checks in order to use up his supply of them.

Defendant admitted at trial that he wrote the check out to himself as payee, signed the name "Addie Roberts" and included in the memo notation space on the check the phrase: "For yarding." The check was endorsed "Michael Dowdy" and underneath there was a driver's license, social security and phone numbers. The defendant knew Addie Roberts was deceased. He claimed at trial, however, that he received the blank check from Lloyd Roberts, and that Roberts gave him the authority to fill it out, told him to sign Addie's name and that if the bank had any question, that it could call him and he would clear it up. The primary issue at trial was whether the defendant had the intent to defraud the Bank of Sugar Grove.

The Sugar Grove police chief, Neal Lippold, testified at trial that the defendant contacted him "about the thing that was happening in Sugar Grove." After *Miranda* warnings were given, the defendant told Lippold he got the June 3 check from Lloyd Roberts for work he had

done for Roberts. He testified he helped Roberts perform various odd jobs, and that Roberts paid him differing amounts for this work on occasion, and that Roberts owed him about $150 at the time of the incident in question. Lippold testified the defendant told him he had taken four checks from Roberts' truck.

Lloyd Roberts, a 67-year-old retired janitor, testified he did not pay the defendant anything for helping him with various odd jobs, or promise to pay him for same. On occasion, they ate meals together, socialized and attended church together. Roberts was a friend of the defendant's family and had known him for several years prior to the forgery incident. Roberts denied he had given the defendant the check or the authority to fill it out, nor had he ever given the defendant any other of the checks which were sometimes kept in the glove compartment of his truck, or on top of his dresser. Roberts testified he signed his own name, not his wife's, when he wrote checks; that he wrote checks in sequence; that he did not keep his own checking balance record; and, prior to April of 1983, on occasion, he had signed and given someone a blank check to fill out.

According to the defendant's testimony at trial, Roberts gave him the check because the defendant wanted to buy a $300 car which he had test-driven over to Roberts' house on the morning in question. Evidence was admitted of three other checks subsequently drawn on the Roberts' account, on June 22, 23 and 24, written by the defendant, and delivered to the First Security Bank of Aurora. The defendant was not charged in connection with those checks. The checks were all signed "Addie Roberts," and the named payee was "Billy Dowdy," the defendant's father. Each of these three checks was endorsed with the signature "Billy Dowdy," and Mr. Dowdy's Aurora bank account number. Defendant admitted he filled out these checks and cashed them at the Aurora bank. He testified at trial that he did so because "Mr. Roberts said that he needed money and he didn't want to go to Sugar Grove and that he didn't know where to cash the check and I figured my dad had money in the account and it would go through here and no one else would know about it." Defendant testified that Roberts gave him a portion of the proceeds of each of these three checks as payment for services rendered. A teller from the Aurora bank testified that on one of the occasions in question, she recalled the defendant, driving a red truck, was accompanied by a male passenger who was over 60 years of age.

In this appeal, defendant contends (1) it was an abuse of the court's discretion to limit his cross-examination of Lloyd Roberts concerning his financial status where such inquiry was made in order to establish

that Roberts had a motive to falsely accuse him of forgery; (2) that it was error for the court to exclude evidence that the defendant's father had repaid the bank and that the bank, therefore, did not wish to prosecute the instant forgery charge where the State "opened the door" to such evidence, and (3) that a new trial must be ordered because the trial judge mistakenly read to the jury the State's refused instruction concerning proof of other offenses, instead of the one modified and tendered by the defendant, and accepted by the court.

■ Defendant concedes that the scope of cross-examination is generally discretionary with the trial judge, contending generally, however, that a criminal defendant should be given the widest latitude in cross-examination (*People v. Barr* (1972), 51 Ill. 2d 50; *People v. Mason* (1963), 28 Ill. 2d 396), and that a person charged with a crime should be allowed to make all proper defenses (*People v. Watson* (1966), 36 Ill. 2d 228). He argues the court's limitation on his cross-examination of Lloyd Roberts prevented him from bringing to the jury's attention evidence of instances in which Roberts' account had been overdrawn. The only specific instance of such overdraft shown in the record was that mentioned in defendant's opening argument; that is, in April of 1983. Defendant contends such evidence was both reasonable and relevant to a showing that Roberts might have accused Dowdy falsely "in order to avoid further financial troubles."

The State's waiver argument is unavailing, for the record shows this issue was raised in the defendant's post-trial motion. Nonetheless, we find unpersuasive the defendant's argument that reversal is required.

■ ■ Cross-examination to show interest, bias, or motive on the part of a witness is a matter of right, subject to the broad discretion of the trial court to preclude repetitive or unduly harassing interrogation and, assuming a proper subject matter, to control the extent of cross-examination. (*People v. Gordon* (1984), 128 Ill. App. 3d 92.) It is a right protected by both the Federal and Illinois constitutions. (U.S. Const., amend. VI, XIV; Ill. Const. 1970, art. I, sec. 8; *People v. Gonzalez* (1984), 104 Ill. 2d 332.) The proposed cross-examination must relate to a proper subject matter; however, the evidence of bias or motive must be direct and positive, not remote and uncertain. *People v. Hiller* (1980), 92 Ill. App. 3d 322; *People v. Lenard* (1979), 79 Ill. App. 3d 1046.

Here, defendant sought to cross-examine Roberts about whether he gave his girlfriend a check to fill out in connection with the purchase of a car, and whether Roberts' checking account was overdrawn in April as a result. Defendant's stated purpose in pursuing that course of ques-

tioning was to show that Roberts was reckless in his checking account practices, was a spendthrift, was overextended and, consequently, that his motive in testifying against the defendant was to "boost his account" by the $300 amount of the check allegedly forged by the defendant.

■ We find the trial court properly determined that evidence that the witness' checking account was overdrawn in April did not allow the inference that Roberts' schemed to accuse the defendant of forgery in order to relieve himself of a debt owed to the defendant. The $300 check, in fact, was honored by the Bank of Sugar Grove; clearly the witness had sufficient funds in his account at the time of the incident in question to cover the check. If defendant had evidence other than the April overdraft which would have borne more directly on whether the witness had a then-present motive to repudiate his alleged debt to the defendant, he failed to offer it. As it was presented to the trial court, the evidence sought to be admitted was only direct and positive as to the state of the witness' checking account in April, but was irrelevant as to the state of the account in June, and immaterial to the issue of whether the witness had given the defendant the authority to write the check in June. It is not an abuse of the court's discretion to exclude speculative and uncertain evidence. *People v. Heidorn* (1983), 114 Ill. App. 3d 933.

■ We note the defendant was allowed to inquire as to the witness' various sources of income, his expenditures, and his checking account record-keeping and practices. Consequently, a large portion of the image of the witness the defendant hoped to convey to the jury was actually accomplished. In such a case, minor technical errors, if any, in the court's ruling as to cross-examination cause no prejudice to the defendant. (See *People v. Rossini* (1962), 25 Ill. 2d 617, 621.) It is well established that claimed error in restricting the scope of cross-examination will rise to the level of reversible error only if the defendant manifestly suffered prejudice as a result of the limitation. (*People v. Crosser* (1983), 117 Ill. App. 3d 24, 30.) No manifest prejudice is evident here, and no abuse of the court's discretion may be said to have occurred.

■ Defendant next contends he received an unfair trial because the State "opened the door" to evidence of whether the bank had been repaid when it elicited from the defendant on cross-examination the facts that he received cash for the checks, but he did not repay the bank.

Prior to trial, the court had granted the State's motion *in limine* to prohibit the defendant from asking Lloyd Roberts or either of the two banks "as to whether or not they desired to drop criminal charges in

this case due to the fact that the defendant's father repaid the bank the amount of the loss in the case."

Defendant argues that once the State brought up the matter of repayment, it "opened the door," and it was error for the court not to allow him to show that his father had made such a repayment.

The State asserts the issue was not included in the defendant's post-trial motion and, therefore, was waived, citing *People v. Pallardy* (1981), 93 Ill. App. 3d 725. Defendant counters that the issue was raised in paragraph 4 of his motion for new trial. That paragraph does not, however, raise the issue specifically argued here, but we believe it is nevertheless sufficiently interrelated to merit consideration. The issue raised in the post-trial motion on its face relates to the court's order prohibiting the defendant from questioning the banks or Roberts about their desire not to testify against the defendant. True, the apparent reason they did not wish to do so was that defendant's father repaid the loss. Defendant's argument at trial with regard to the State's "opening the door," however, was not that he should be allowed to ask the defendant if his father repaid the bank, but that the State's question had opened the door to the issue that "certain people involved in this case never wanted to pursue these charges." The defendant asked the court to reverse its earlier order *in limine,* find the State had opened the door on the matter, and allow him to call witnesses as to the fact.

■ The argument defendant presents in his brief here, however, is that the door opened by the State left the jury with the impression that the defendant had acted "in bad faith." Defendant argues that had he been allowed to "shut the door," so to speak, by evidence that his father had already made repayment, the jury's impression of his "bad faith" would have been corrected since it would have been clear it was unnecessary for him to make repayment.

In *People v. Payne* (1983), 98 Ill. 2d 45, *cert. denied* (1984), 465 U.S. 1036, 79 L. Ed. 2d 708, 104 S. Ct. 1310, cited by the defendant in support of his argument, the trial court originally suppressed weapons discovered in the course of a search of an apartment of one of the defendants after determining that the search was illegal. During trial, defense counsel cross-examined one of the arresting officers concerning whether the defendants and the apartment were searched. The trial judge found that the purpose and effect of the defendant's cross-examination was to create the clear and unmistakable impression that nothing was recovered in the course of the search and, accordingly, the court allowed the State to rebut the false implication which was created by the defense counsel's questions.

The stated purpose of the prosecutor's question to the defendant here was to establish that he had the intent to defraud the banks. The prosecutor was not attempting to create a "false implication" that the defendant acted in "bad faith," he was attempting to create the *actual* implication that the defendant acted in bad faith in that he had the intent to defraud. It is difficult to see how the defendant's cause would have been aided had he been allowed to explain that his father repaid the money, since such evidence would simply be further contradiction of his defense at trial that he wrote the checks so that Roberts would not have to go back to Sugar Grove to get cash and that Roberts gave him only a portion of the proceeds of each check in payment for work he had done for him. *Cf. People v. Bailey* (1958), 15 Ill. 2d 18, 25 (defendant's unsolicited tender of personal checks was found to be an incriminating circumstance inconsistent with a clear conscience).

We find no error in the court's refusal to accede to the extremely broad relief which was requested by the defendant at trial; *i.e.*, to call witnesses to testify they did not wish to press charges against him due to his father's repayment. We note additionally the jury was indirectly made aware of the likelihood that defendant's father had repaid the bank.

Defense counsel, attempting to impeach Chief Lippold's testimony by reference to the chief's written report, asked him:

"Q. [Defense counsel] Did you not write the following words, 'Michael explained that his father had agreed—'

A. [Chief Lippold] To pay back—

Q. '—to pay the amount of these two checks, $260 dollars,' and then the sum is written out, 'two hundred and sixty dollars to the First Security Bank of Aurora, the bank that cashed these documents.' Further, the—well, I'll leave it at that point, right there. Did you not write that?

A. I wrote that down, yes I did. Do you want me to explain?

Q. Mr. Wechter [the prosecutor] will have a chance to question you if you wish to explain anything further."

On redirect, Lippold testified defendant made that statement, but Lippold had no knowledge whether Billy Dowdy agreed or not.

■■ Defendant's last contention is that he should be granted a new trial because the court read to the jury the wrong proof of other offenses instruction, even though it had previously accepted his modified version of Illinois Pattern Jury Instructions, Criminal, No. 3.14 (2d ed. 1981). His version provided that evidence that the defendant had been involved in offenses other than that charged in the information was received solely on the issue of defendant's "design"; the refused

version tendered by the State provided the evidence was received on the issue of "intent, design and motive."

The State points out, and we agree, that this issue was waived because the defendant did not object at trial or in his post-trial motion. Further, no substantial or plain error is evident since, as the State notes, it appears the correct version of the instruction was tendered in written form to the jury. Although defendant argues the record does not support the State's assertion in this regard, we note the record contains a copy of each version. The State's version is clearly marked "Refused" and is stamped "Filed in open court" and dated. A copy of the instruction, which was apparently the defendant's version, is bound in the record as the last instruction in the series of instructions, although it is unnumbered, unidentified as to the tendering party, is not file-date stamped or marked "Given." None of the other instructions in the series were marked "Given," either, and none appear to be originals.

Supreme Court Rule 451(c) (87 Ill. 2d R. 451(c)) provides:

"(c) Section 2—1107 of the Code of Civil Procedure to Govern. Instructions in criminal cases shall be tendered, settled, and given in accordance with section 2—1107 of the Code of Civil Procedure, but substantial defects are not waived by failure to make timely objections thereto if the interests of justice require."

In turn, section 2—1107 of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—1107) provides in pertinent part that the court shall mark the margin of the original and copy of each instruction with the notation "Refused" or "Given" and that the original written instruction shall be taken by the jury into the jury room and later returned with its verdict into court. "The originals and copies of all instructions, whether given, modified or refused, shall be filed as a part of the proceedings in the cause." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1107(b).) The obvious irregularity and incompleteness of this record is a circumstance which is chargeable to the defendant as appellant, and any doubt arising from the incompleteness of the record is resolved against the appellant. *People v. Turner* (1982), 110 Ill. App. 3d 519.

For these reasons, the judgment of the circuit court of Kane County is affirmed.

Judgment affirmed.

LINDBERG and STROUSE, JJ., concur.