THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NESTOR ROSARIO, Defendant-Appellant.

First District (4th Division) No. 86—0438

Opinion filed February 4, 1988.

Jeffrey Urdangen, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Kathleen A. Bom, and Diane N. Walsh, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendant, Nestor Rosario, was charged with four counts of murder, three counts of arson, and three counts of aggravated arson in connection with a residential fire that killed a three-year-old child. The State nol prossed two of the arson counts. After a jury trial, Rosario was acquitted of murder. The jury was unable to reach a unanimous verdict on the remaining counts and the court declared a mistrial on those charges.

Defendant's attorney moved for a substitution of judges for the retrial, alleging that the trial judge was prejudiced against Rosario. Another judge heard the motion and denied it, finding that the trial judge was not prejudiced in any way. Thereafter, defendant orally moved before the trial judge, asking him to recuse himself. This motion was also denied.

On retrial, the jury returned verdicts of guilty on the arson and aggravated arson charges. Rosario was sentenced to 16 years in the Illinois Department of Corrections.

Rosario appeals, contending that: (1) the trial judge's conduct in the first trial was so prejudicial that he should not have been allowed to preside in the second trial; (2) the trial court's allowance of certain immaterial, prejudicial, and cumulative evidence constituted reversible error; (3) the trial court's negative comments on the defense case invaded the province of the jury; (4) the trial court abused its discretion by refusing to allow a defense instruction; (5) defendant was denied a fair trial when the State's closing argument accused the defense attorneys of suborning perjury; (6) defendant was not proved guilty beyond a reasonable doubt; and (7) since defendant was acquitted of murder, his subsequent conviction of the lesser included offenses of arson and aggravated arson violated the fifth amendment's proscription against double jeopardy.

We affirm.

BACKGROUND

On August 25, 1984, a fire in a two-story frame house caused the death of a three-year-old girl.

After the first trial, in June of 1985, the jury told the court that it was deadlocked on the arson and aggravated arson charges, but that it had reached a verdict on the murder counts. The verdict was not guilty.

The retrial on the arson and aggravated arson charges began in December of 1985. On the day before trial, Rosario unsuccessfully moved *in limine* for the exclusion of all testimony concerning the death of the child.

The State presented 12 witnesses, whose testimony is summarized as follows.

On August 23, 1984, Bernard Roque and Jimmy Lorenz, neighbors of the victims, stopped Rosario as he was removing a radio from a car parked in front of 1822 North Karlov in Chicago. The automobile belonged to Victor Castro, who signed a complaint against Rosario at the police station.

George Mercado testified that he was with Rosario on the night of August 23 and that they went to the 1800 block of North Karlov to steal a car radio. Mercado, who acted as lookout and escaped from the scene, was arrested shortly after Rosario was taken into custody.

The following day Rosario visited Mercado. Rosario had just been released from jail on his own recognizance for the theft of the car radio. He told Mercado that he was angry about a fight that he had gotten into in jail. Later that day, Rosario came to the gas station where Mercado worked and purchased some gasoline.

On August 25, 1984, Bernard Roque arrived home at approximately 4:30 a.m. He smelled gas but could not locate the source. While he was taking a shower, he heard an explosion. He looked out of a window and saw that the house across the street, 1822, was engulfed in flames.

Elba Diaz and her three children lived in the first-floor apartment at 1822 North Karlov. Mrs. Diaz was awakened by an explosion and saw that the whole back porch was on fire. She rescued two of her children but could not retrieve the third because of the intensity of the smoke. She then ran up to the second-floor apartment to alert her neighbor and ask for help. The neighbor could not rescue the child either but got his own family out of the building.

When firemen arrived, Mrs. Diaz' daughter was removed from the building. She did not survive.

The cause of the fire was later determined to have been a flam-

mable liquid accelerant that was poured on the deck of the porch and ignited.

Detective Roland Paulnitsky talked to Victor Castro at the scene of the fire several hours later. Castro pointed out defendant's automobile, which had just driven past the scene of the fire. Castro saw defendant point to the burned house and smile.

Paulnitsky reviewed the theft complaint signed by Castro against Rosario. He decided to speak to Rosario and Mercado. Detective Ronald Branum accompanied him to find Mercado.

Mercado led the detectives to defendant, who agreed to accompany them to the police station for questioning. Once there, the two men were separated. Paulnitsky spoke to Mercado and then Rosario about the theft of Castro's car radio.

Paulnitsky advised Mercado of his *Miranda* rights and then told him he was investigating the fire. After questioning him, Paulnitsky went back to defendant's interview room and advised him of his rights. Rosario agreed to answer his questions about the fire.

Rosario told the detective that after he was arrested for the theft of the automobile radio and put in the lock-up, he had a fight with another person. He was angry and upset. He purchased a can of gasoline. At approximately 2:30 a.m. Rosario took the gas in a bucket to the address where he believed Victor Castro lived, 1822 North Karlov. There he poured gas onto the porch and threw a gasoline-soaked cloth into a window. He lit a cigarette and threw it on the area he had doused with gasoline.

Based on Rosario's description of the gasoline can and its location, Detective Paulnitsky retrieved the can for evidentiary purposes.

The assistant State's Attorney assigned to the case, Edward Snow, testified that he interviewed Rosario in the presence of Paulnitsky on August 24, 1984. Rosario was again given his *Miranda* warnings and again agreed to tell what had happened. He told Snow essentially the same story as he had told Paulnitsky. He also told Snow that the white bucket that he had used to transport the gasoline from the can was either at his home or in his car. He agreed to a search for the bucket.

Snow and Paulnitsky found the white bucket in the trunk of Rosario's car.

Rosario gave a statement admitting that he started the fire. The court reporter transcribed the statement, which was read to Rosario, and he initialled two or three changes. He signed it.

At the trial, the statement was read to the jury.

Several defense witnesses testified that they saw Rosario in his

bed on the night of August 25 and in the morning of August 26.

In his own defense, Rosario testified as to his conduct and whereabouts on the day he was released from jail on his own recognizance, August 24, 1984. He went to Mercado's house and told him that he was mad about the fight he had gotten into while in jail. He then went home, ate, showered, and went back to Karlov and Armitage, where he saw his friend, Dennis Termini.

Rosario asked Termini to help him find a gas can because he needed gasoline for his car. The two men went to a garage and borrowed a can, which Rosario filled up at a gas station. Then the men went to Rosario's home, carrying the gasoline can. Rosario testified that he had put the wrong kind of gas in the car and had to siphon out the old gas. He discarded the old gas and poured the new gas into the car. Then he and Termini drove around.

At approximately 10:30 p.m., Rosario went home and spoke to his mother until he went to bed at approximately 10:50 p.m. He woke up at 9 a.m. He washed his car and then drove around Armitage and Karlov with two friends until a police car came up and asked him to go to the police station.

According to Rosario, when he arrived at the parking lot at the police station, Detective Paulnitsky grabbed his arm and took him to an interview room, where he was locked in. A Detective Branum was present, along with Detective Paulnitsky. When they questioned him about the fire and his recent possession of the gasoline, Rosario told the officers about the gasoline he had purchased. Once when Paulnitsky left the room, Detective Branum raised his voice when Rosario denied involvement in the fire.

The two detectives then drove Rosario to the fire scene and he denied any familiarity with the house.

Back at the station Rosario was handcuffed to the wall. He testified that Detective Branum told him that if he made up a story about the fire, he would be released in a few days. If he kept denying that he started the fire, Detective Branum claimed, he would receive "20 to 40 years" or the electric chair. According to Rosario, he then gave his statement.

On December 12, 1985, the jury found Rosario to be guilty of one count of arson and three counts of aggravated arson. Judgment was entered on the verdicts. After the sentencing hearing in aggravation and mitigation, Rosario was sentenced to 16 years' imprisonment.

OPINION

■ Since the trial of this cause the Illinois Supreme Court has

declared the aggravated arson statute unconstitutional. (*People v. Johnson* (1986), 114 Ill. 2d 69, 499 N.E.2d 470.) As the parties consequently agree, Rosario's convictions of three counts of aggravated arson and sentence (on one count of aggravated arson only) are void and must be vacated. The matter is accordingly remanded to the trial court for resentencing on the arson conviction. (See *People v. Walsh* (1980), 80 Ill. App. 3d 754, 400 N.E.2d 587.) Notwithstanding this determination, we will reach the merits of the issues raised on this appeal.

## I

■ Rosario contends that he was denied a fair trial because the judge attempted to prevent the jury from returning a verdict of acquittal on the murder counts. This is a serious charge which, if true, would undoubtedly be an abuse of discretion. (See *People v. Rehberger* (1979), 73 Ill. App. 3d 964, 392 N.E.2d 395.) However, we have carefully examined the pertinent portions of the transcript and do not agree that the trial judge was attempting to prevent the jury from returning a verdict on the murder count. At the time of the court's alleged interference with the jury's decision, the jury had been deliberating for approximately 14 hours over two days and twice had been asked whether further deliberations would be fruitful. On both occasions, the court asked the jury foreman to give the numerical breakdown of the votes on the three charges, emphasizing that the foreman was not to indicate which way the jurors were leaning as to any count. Then the attorneys for the prosecution and defense agreed that if the jury still could not reach a verdict by the third time they were brought out, a mistrial should be declared. When the judge questioned the jury as to its progress on the third time, again he asked for the numerical vote without an indication of which way the majority was voting. The foreman replied that the vote on the murder charge was 12 to 0, on the aggravated arson charge, 8 to 4, and on the arson charge, 9 to 3. The judge then asked if the jurors believed that they could *reach a verdict* with further deliberations. They replied in the negative. Each juror was polled and agreed that he or she could not reach a verdict. At that point, the jury was excused for a few minutes.

The State then moved for a mistrial on the grounds that the jury indicated that it could not reach a verdict. Defense counsel strongly objected, citing the foreman's count of 12 to 0 on the murder charge. Although defense counsel argued that such count constituted a verdict, the judge commented that there was no verdict in open court,

no written and executed verdict returned. Therefore, the court was prepared to declare a mistrial, per the previous agreement of counsel.

The transcript of the judge's next comments demonstrates that he honestly and reasonably did not believe that a verdict had been reached during deliberations because he thanked the jury for their efforts, saying, "But the jury has returned no verdict in open court on any of the charges, and—" At that point the foreman interjected, "The murder count was twelve to nothing." The court inquired, "Has the jury got *a verdict* on that count?" (Emphasis added.) The foreman replied, "On the one count, yes." The court then asked, "Is it signed and executed?" When the foreman answered in the affirmative, the judge allowed him to go back to the jury room to bring it in and read it into the record. The judge then entered a finding of not guilty on the murder charge.

Defense counsel urges this court to find what the record does not support, that the trial judge was prejudiced against Rosario and attempted to *prevent* the jury's verdict. Instead, we agree with the judge who reviewed this issue on defendant's motion for substitution of judges, who said, "Clearly, I do not find that (the judge was) prejudiced in any way."

The first two times that the jurors were called out during deliberations they reported that they had been unable to reach unanimity but wanted to continue deliberations. Each time, the jurors gave a numerical indication of the status of their deliberations without indicating whether the majority was for or against defendant. On the third time, the jurors told the judge further deliberations would not help them reach a verdict, a clear indication that they had not, in fact, reached a verdict on any count. The 12 to 0 vote was not a final determination of the jury until reduced to a written and signed verdict. Until that point, any juror could change his or her mind again. Accordingly, we reject Rosario's insinuation that the trial judge tried to block the jury from acquitting him of murder.

## II

■ Defendant next argues that the trial court abused its discretion in allowing the admission of irrelevant and prejudicial evidence, that a three-year-old girl perished in the fire. He contends that the trial court should have granted his motion *in limine* to bar any reference to that fact. The State had opposed the motion on the grounds that it was entitled to show that Rosario knew or should have known that someone was inside, his knowledge being an ele-

ment of the aggravated arson charge. The court denied the motion, stating that it was "not going to change the facts here *** [or] direct people not to testify as to what actually did happen, and how it happened."

According to Rosario, the court then allowed repeated references to the death of the child, thereby depriving Rosario of a fair trial because of the potential prejudice that may have resulted.

Rosario does not argue that all evidence tending to show the presence of people inside the house is irrelevant and prejudicial; he objects only to that testimony relating to the girl's death.

The aggravated arson statute in effect at the time of trial stated that a person commits the crime when he damages a building by fire or explosive and "he knows or reasonably should know that one or more persons are present therein." As a general proposition, therefore, evidence of the girl's presence and death would appear directly relevant. However, defendant claims that the State could have established this element by eliciting testimony of the presence of Mrs. Diaz or the other family who lived in the upper floor of the building.

We do not find that the trial court's denial of the defense motion *in limine* was an abuse of discretion; the child's presence in the home was relevant to the crime, even though there may have been other evidence to establish that persons were present at the time of the fire. The court was not persuaded to compel the State to edit its case by omitting all testimony of the death. Nevertheless, the court did state that the matter should not be unduly dwelt upon. At one point when the second fireman's testimony mentioned the girl's body the court agreed with the defense that further testimony as to the dead child would have a cumulative aspect. The court noted, however, that the State had the right to establish that the fire was an arson and to elicit the firemen's testimony as to their activity in fighting the fire, which included the removal of the child's body.

We are not persuaded that the trial court, having made its initial ruling on the motion to bar testimony, abused its discretion in overruling several defense objections to the testimony that related to the girl's death. It does appear that some of the testimony was cumulative and of marginal relevance. However, the trial court has broad latitude in its evidentiary rulings and if the challenged testimony is part of the narrative that leads to the arrest of the defendant, it will not necessarily be considered error. (See *People v. Tiess* (1981), 97 Ill. App. 3d 45, 49, 421 N.E.2d 1059, 1062.) We do not believe that the trial court can be faulted for allowing the State to present the whole story of what happened just because the emotional and tragic

overtones of the death of a small child may have an effect on the jury. Her death, after all, was an undeniable consequence of the fire.

Moreover, the trial court gave the jury a limiting instruction regarding the death of the girl, admonishing the jury to consider the evidence only as it related to the arson charges. They were also informed that Rosario had been acquitted of murder in connection with the death, a fact that could have swayed them toward acquittal of at least the aggravated arson charges. In any event, the giving of an instruction to disregard evidence ordinarily cures error in its admission. *People v. Johnson* (1973), 11 Ill. App. 3d 745, 297 N.E.2d 683.

Finally, we note that the evidence against Rosario in this case is substantial, as discussed below in part IV of this opinion. Any error in the admission of testimony regarding the girl's death can be considered harmless because it is not likely to have been a major factor in the conviction. See *People v. Dukes* (1986), 146 Ill. App. 3d 790, 497 N.E.2d 351 (evidence of children screaming in burning building irrelevant to the charge of simple arson but was not reversible error).

In this case, the jury did believe Rosario's confession and the other evidence that he started the fire. A child died as a result of his actions, even though he did not intend to kill her. Her death was a tragic fact, a consequence of pouring gasoline over the porch of a residence in the early morning hours and then lighting it. The jury knew that Rosario had been acquitted of murder. They were instructed to assess the evidence of arson and aggravated arson only, and we cannot presume they disregarded the court's explicit charge.

### III

■ Rosario next highlights two instances in which the trial court's comments as to certain witnesses allegedly deprived him of a fair trial because they tended to discredit the defense testimony and bolster the prosecution's evidence.

First, Rosario claims that the court misled the jury when, in sustaining an objection of the prosecution, the court remarked that there was no evidence that Detective Branum was present in the interview room with Paulnitsky and defendant during Rosario's oral or written statements. Defendant argues that, since his confession was coerced by Detective Branum's threats, the judge's remark was highly improper and constituted the judge's opinion of the defense theory of the case.

To explain what led up to the remark it should be noted that according to the State's witnesses, Detective Branum did not interro-

gate Rosario but only accompanied Detective Paulnitsky when he talked to George Mercado and picked up defendant for questioning. Paulnitsky testified that he (Paulnitsky) never used threats or force to coerce Rosario's statement and that Branum did not participate in the interviews. Assistant State's Attorney Edward Snow testified that he and Paulnitsky were the only ones present when Rosario gave his statement. He also testified that Rosario told Snow that he had not been threatened and had been treated fairly.

In contrast to the State's version, Rosario testified that Branum was in the interview room with Paulnitsky and that when Paulnitsky left, Branum told Rosario that he would get 20 to 40 years or the electric chair if he did not admit starting the fire. Branum also told Rosario, he claims, to make up a story about the fire so that he would be released in a few days.

In rebuttal, Branum testified that Paulnitsky was the one who interrogated Rosario. On cross-examination, Branum was asked about Rosario being handcuffed to the wall in the interview room. He replied that he did not know because he was never in the room. Next, defendant's attorney questioned him about police procedures in the case of an officer threatening a subject. The State's objection was sustained, as the court noted that there was nothing in the record to support a basis for the question. The defense attorney then asked whether he would testify in court that Paulnitsky threatened a subject if he did so in Branum's presence. Again, the State objected and again, the court sustained, stating, "There's nothing in the record to show or to support [that] this man was ever present." The court explained, "There's nothing to support the input of [sic] or inference *in your question* [that] this man was ever present during any of the oral or written statements." (Emphasis added.) It is clear from the context and the line of questioning that the court was sustaining objections on questions that were either hypothetical (what police were to do if a subject was threatened) or assumed a fact that Branum denied (his presence during the interviews). If he was not present during the interviews, as he maintained, he could hardly answer questions about the interviews from his own knowledge. We do not believe the trial court's comments, taken in that context and with his qualifying remark, can be construed as telling the jury not to believe defendant's version of the case.

Defendant cites *People v. Tyner* (1964), 30 Ill. 2d 101, 104, 195 N.E.2d 675, 677, in which the Illinois Supreme Court stated that the trial judge is rarely "called upon to comment on the evidence during trial except where necessary in ruling upon its admissibility, and un-

der no circumstances should he express an opinion as to its veracity, for this is the province of the jury." However, in the pending case the judge did not give the jury his opinion on the truth of the evidence but only commented upon it in ruling on its admissibility. He sustained specific objections to specific questions as they were posed. As such, he did what trial judges do in making evidentiary rulings—offered the basis for the ruling. He was not invading the province of the jury. Moreover, the judge instructed the jury that "neither by these instructions nor by any ruling or remark which [he had] made did [he] mean to indicate any opinion as to the facts or as to what [the jury's] verdict should be." Therefore, we find no abuse of discretion in the remarks of the trial court.

The second incident challenged by Rosario arose out of the defense testimony of Walter Braun. Braun, as an expert witness, was giving his opinion as to whether or not a good fire investigator could determine whether there had been a forced entry into any window or doors at the fire scene. Braun had never been to the fire scene and had only reviewed various reports concerning the fire. The trial court sustained an objection to this question, ruling that it called for speculation and that the defense witness could not contradict the testimony of people at the scene as to their *actions* and observations since he was not there himself. On the same grounds the court sustained another objection as to whether or not a fire investigator could determine whether a window at the fire scene had been lifted and remained open during the fire.

Although the defense should be allowed some liberality with the questions posed to its expert witness, we cannot say that this particular issue concerning the window was of major significance, given the fact that Braun had not inspected the site and presumably could offer no direct observations as to the conditions. To allow him to give an opinion concerning what a fire investigator should or could do or see with regard to the doors or windows of a building might well lead to jury confusion. When the relevance of evidence is so speculative that it has little probative value, the trial court may exclude it. *People v. Gorney* (1985), 107 Ill. 2d 53, 481 N.E.2d 673.[1]

We conclude that the trial court's comments on the evidence were neither improper nor unduly prejudicial to the defense.

---

[1]Even if there were no sign of forced entry into a window, the gasoline poured on the porch would supply ample basis to support the arson charges. However, the issue here is not the significance of the condition of a window but whether the defense expert was competent to testify concerning that point.

## IV

■ Defendant contends that the trial court deprived him of the right to put his theory of defense before the jury in the form of a written instruction that was supported by the evidence. He claims that his coerced confession was the sole evidence linking him to the crime, that there was no motive, physical evidence or objective proof of arson.

While a defendant is entitled to a jury instruction on his theory of the case, *People v. Lefler* (1967), 38 Ill. 2d 216, 230 N.E.2d 827, if there is no applicable Illinois Pattern Instruction (IPI) the court may give an instruction that is "simple, brief, impartial, and free from argument." (107 Ill. 2d R. 451(a).) In the pending case defendant orally requested this instruction: "A confession of a defendant without corroboration by independent evidence is insufficient, standing alone, to support a conviction." The court rejected this, stating that there was evidence consisting of more than just defendant's confession.

Initially we note that defendant did not formally tender a written instruction in compliance with section 2—1107 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1107) and Supreme Court Rule 451(c) (107 Ill. 2d R. 451(c)). Ordinarily counsel must put the requested instruction in the record to avoid a waiver of the issue. (See *People v. Dowdy* (1986), 140 Ill. App. 3d 631, 488 N.E.2d 1326.) However, since the trial court expressly stated that such an instruction would be refused even if formally tendered, we do not find the issue to be waived.

Nevertheless, we do not find that the trial court committed reversible error in refusing this instruction. It is true that, under Illinois law, for a conviction of a crime based upon a confession to be sustained there must be corroborative evidence. (*People v. Holmes* (1977), 67 Ill. 2d 236, 367 N.E.2d 663.) Corroboration may be supplied, however, by the proof of the *corpus delicti, i.e.,* that a crime occurred. (See *People v. Willingham* (1982), 89 Ill. 2d 352, 432 N.E.2d 861.) The record contains evidence independent of the confession that an arson was committed. The testimony of Mercado as well as Rosario establishes that defendant was angry about the fight he got into when in prison for stealing the car radio, a possible motive since Rosario apparently thought the house that was burned was the one in which the theft victim lived. Other evidence indicating that the fire resulted because of an arson includes defendant's gasoline can and bucket, the testimony that Rosario did obtain gas, the testimony of Bernard Rogue that he smelled gasoline just before the fire, and the testimony of a State witness that the fire was caused by a

flammable liquid accelerant poured on the back porch and ignited. Hence, while the jury could have determined that Rosario did not start the fire, it might have been confused by an instruction that seemed to indicate a lack of independent evidence of the *corpus delicti*.

We have reviewed the jury instructions in their entirety and find that the defense matters were sufficiently covered by several instructions. We do not find that the court abused its discretion in rejecting the proposed, non-IPI instruction.

## V

■ Rosario claims he was denied a fair trial because the prosecutor commented during closing arguments that "after getting some professional advice, [defendant] *** tone[ed] down his story a little bit more." According to defendant, this comment suggested to the jury that on the advice of his counsel he lied.

The State counters that the remark was invited comment, since Rosario's opening statement was premised on the theory that defendant was coerced into giving a false confession and that Rosario was a person who knew to tell the truth. The passage from which the above comment was excerpted was a portion of the closing argument in which the State was analyzing the credibility of defendant's trial testimony.

We do not find that this isolated comment rises to the level of reversible error. In light of the evidence and the lengthy trial, this remark cannot be said to have resulted in substantial prejudice to Rosario. Nor do we believe that the verdict would have been different had the remark not been made. See *People v. Spann* (1981), 97 Ill. App. 3d 670, 422 N.E.2d 1051; *People v. Smith* (1984), 127 Ill. App. 3d 622, 469 N.E.2d 634.

## VI

Rosario next urges us to reverse his conviction for want of proof. He argues that there were no eyewitnesses and no other corroboration of his confession. His confession, since it was coerced, is entitled to no weight.

■ Taking the voluntariness of his statement first, we note that Rosario has never claimed physical intimidation or abuse. Rather, he states only that Branum threatened him with a long prison term or the electric chair if he did not confess to the crime. Paulnitsky and Branum both denied that Branum even spoke to him. The assistant State's Attorney testified that Rosario never told him that he had

been threatened and in fact said that he had been treated well.[2]

Rosario presumably never wondered how the police could set him free after a few days if he *admitted* committing such a serious crime as setting a house on fire but give him the electric chair if he *denied* the crime. The record indicates that he had been arrested at least twice before and had some familiarity with the criminal justice system. It is not difficult to believe that the jury, in assessing Rosario's credibility, did not believe his trial recantation of his earlier confession and were not persuaded that his confession was anything other than voluntary.

We note that there were inconsistencies between the confession and certain aspects of the testimony regarding the actual fire. However, the essence of the confession was that Rosario deliberately set the fire using the gasoline that he had purchased and a lit cigarette.

■ As for evidence corroborating Rosario's confession, the record contains testimony and exhibits tending to prove that defendant purchased gasoline hours before the incident, that the fire was started by a flammable liquid accelerant, that Rosario was angry over an incident that occurred when he was incarcerated because of his attempted theft of Victor Castro's car radio, and that Castro, who lived nearby, may have been the intended victim because Rosario believed that he lived in the house that was burned. In addition, Castro testified that he saw defendant drive slowly by the burned house later in the day that the fire occurred and point and smile.

The evidence was sufficient for the jury to infer that Rosario had the opportunity and motive to commit the crime. It was the jury's function, of course, to weigh the evidence and determine the credibility of the witnesses. (*E.g.*, *People v. Cukojevic* (1981), 103 Ill. App. 3d 711, 431 N.E.2d 1154.) We cannot say that the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt of guilt. *People v. Winfield* (1983), 113 Ill. App. 3d 818, 826, 447 N.E.2d 1029.

## VII

■ Defendant's final contention is that the second trial on the arson charges obviated his fifth amendment protection against double jeopardy. Under this theory, since the first jury expressly rejected the murder indictment, including the one charging him with causing a

---

[2]The record contains defendant's motion to suppress his statements. An unidentified handwritten notation across the top of the motion states that defendant did not testify in support of the motion and that it was denied.

death while committing a forcible felony (arson), the jury necessarily found that Rosario did not commit arson or aggravated arson. These charges are lesser included offenses.

Both sides rely on *Brown v. Ohio* (1977), 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221, in which the court stated:

> "The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. \*\*\* And it protects against multiple punishments for the same offense.' \*\*\*
>
> The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger v. United States*, 284 U.S. 299, 304[, 52 S. Ct. 180, 182, 76 L. Ed. 306] (1932):
>
> > 'The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not \*\*\*.' " 432 U.S. at 165-66, 53 L. Ed. 2d 194, 97 S. Ct. at 2225.

The Supreme Court further explained that, " 'If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.' " 432 U.S. at 166, 53 L. Ed. 2d at 194, 97 S. Ct. at 2226.

The charge of arson is a lesser included offense of the charge of felony murder based upon arson. However, to prove the felony murder charge an additional element must be proved, the death of a person caused by the commission of the forcible felony. The jury did not acquit Rosario of the arson charges. Their acquittal of the felony murder counts may well have been a product of lenity; they did not believe Rosario was a murderer. Nevertheless, the jury was deadlocked on the arson charges, leading to the second trial.

In *People v. Jenkins* (1976), 41 Ill. App. 3d 392, 354 N.E.2d 139, the defendant was acquitted of attempted murder, which charge was based upon a single shooting that was also the basis for aggravated battery charges. The jury was unable to reach a verdict as to battery charges and a mistrial was declared. The court acknowledged that the battery charges were lesser included offenses of attempted murder, but upheld the conviction of the lesser charges upon retrial, noting that the jury at the first trial was not silent as to the included offenses but were simply unable to reach a unanimous verdict. The

court commented:

> "The law has long provided for just such circumstances. The trial court may declare a mistrial if the jury is unable to reach a verdict. [Citations.] However, it is a well-established rule that the State is entitled to retry defendant on the same charge and the doctrine of double jeopardy is not a bar to this subsequent prosecution. [Citations.] *Jenkins*, 41 Ill. App. 3d at 394, 354 N.E.2d at 140.

We believe *Jenkins* is controlling on this issue. The lesser offenses were charged in the indictment and the jury considered the charges. They did not acquit Rosario on the arson counts. Therefore, a retrial as to those charges was appropriate.

For the foregoing reasons, we affirm the judgment entered on the jury's verdict as to the arson charge, vacate the convictions of aggravated arson, and remand this matter for resentencing on the arson count.

Affirmed in part; vacated in part and remanded.

JIGANTI, P.J., and JOHNSON, J., concur.