THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY WATSON, Defendant-Appellant.
First District (4th Division) No. 1—88—2007

Opinion filed November 7, 1991.—Rehearing denied February 10, 1993.

Rita A. Fry, Public Defender, of Chicago (James S. Jacobs, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Joseph Brent, and David Stabrawa, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial in the circuit court of Cook County, defendant, Larry Watson, was found guilty of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14) and attempted aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 8—4). He was sentenced to 17 years in the Illinois Department of Corrections with three years' mandatory supervised release for the criminal sexual assault charge. On the attempt charge, defendant was sentenced to serve a term of eight years to run concurrently to the 17-year term. On appeal, defendant contends that (1) the trial court erred in denying his motion to suppress statements, since they were the product of physical coercion; (2) the trial court erred in finding that his *Miranda* warnings before interrogation were proper; (3) the trial court erred in not supplying the jury with a guilty verdict form for each count charged; (4) there was insufficient evidence to prove him guilty beyond a reasonable doubt as to the charge of attempted aggravated criminal sexual assault; and (5) the trial court abused its discretion by not considering the mitigating circumstances and his potential for rehabilitation in sentencing.

We affirm.

Complainant, who was 16 years old at the time of the incident, testified that on December 20, 1986, at about midnight, she stopped to speak to a friend who was in the company of defendant on the cor-

ner of 103rd and La Salle Streets in Chicago. The witness stated that defendant was wearing a black jacket with a white fur collar and white pinstripe pants. Police later used this description to apprehend defendant. She further testified that after her friend left she and defendant continued their conversation as they walked down the street. Complainant stated that defendant asked for her telephone number and that she waited while he borrowed a pen from some passersby. The witness then testified that defendant told her to turn around so he could give her his telephone number. When she turned to face defendant, he was pointing a gun at her stomach. Complainant testified that she engaged in vaginal intercourse and oral copulation at gunpoint. When she appeared to be uncooperative, defendant would slap her in the face and tell her to "get right." The initial reason complainant gave for being forced to pull her pants down was so that defendant could engage in anal intercourse.

Defendant testified that he considered his conversation with complainant to be "friendly." He stated that it was complainant who suggested that they have sex and asked him if he had any money that he could give her. The witness stated that he did not harm complainant. He did testify that he gave her money but stated, contrary to complainant, that the money was not given in exchange for sexual intercourse. Thereafter, the two went their separate ways.

Complainant testified that she went home and told her mother what had happened, and that her mother called the police. The police transported her to a neighborhood hospital. She was treated by Nurse Linda Healy. Healy testified that upon arriving at the hospital the victim was not crying nor was she visibly upset. She further stated that the victim had no bruises, lacerations, internal or cervical bleeding. The parties stipulated that the victim's vaginal smear was positive for spermatozoa while her oral smear was negative and that there was no finding of any vaginal bruises or lacerations. The officers then transported the victim to the police station where she viewed a lineup and identified defendant as the person who had raped her.

Defendant testified that he went to the basement apartment of a family friend, Leonard Leverette. He stated that before Leverette could open the door, the police, Officers Alexander Curd and Robert McKeever, came into the basement stairwell and arrested defendant. Officer Curd testified that the stairwell was dimly lit and that the defendant appeared to be hiding in a mound of garbage. Officer McKeever testified that when defendant did not respond to Officer Curd's order to come out with his hands up, he (McKeever) then kicked defendant in the head "pretty hard." Officer McKeever then

stated that he discovered the gun in some nearby bushes. Leverette testified, contrary to the arresting officers, that there was no trash in his basement stairwell. Leverette also stated that when defendant was arrested there were no marks or scars on defendant's face when he left the scene in the squad car.

While in the police car, Officer Curd testified that defendant was given his *Miranda* rights and that defendant indicated he understood his rights but denied he had any involvement with the rape. Officer McKeever testified that defendant was handcuffed to the wall while in custody at the police station. Officer McKeever then began questioning him about the incident.

Defendant testified that he suffered physical abuse when his answers were not satisfactory. As a result, he sustained several injuries. The one he complained about was a deep cut over his right eye. Defendant testified that he told Officer McKeever he would sign a statement implicating himself in a sexual assault provided he was taken to the hospital for treatment. The witness stated that he signed this statement because he "was tired of being hit." At the hospital, he was treated by Nurse Healy. He received four stitches above his right eye. Officer McKeever testified that while at the hospital he told defendant, "it really did not make sense for him to sit and [say] he did not know anything about this when the person that was involved gave such a vivid description and the description fit him." Officer McKeever further stated that shortly thereafter defendant told him that he had committed the rape.

When defendant returned to the police station, he met with Detective Daniel McWeeny and Assistant State's Attorney Bertucci. Defendant testified that he signed a written statement prepared by Assistant State's Attorney Bertucci. He stated that he signed the statement because he was being threatened by Officer McKeever. Bertucci testified that he noticed defendant's eye and was told by Detective McWeeny that the injury occurred during arrest. He also testified that defendant indicated that he agreed with this explanation. Further, Bertucci testified that defendant told him that he "had been treated okay" by the police.

On appeal, defendant first argues that his written and oral statements were the product of physical coercion. The State maintains that it met its burden of proving defendant's confession was voluntary and that the allegations of physical abuse and coercion were unsubstantiated. The trial court agreed with the State's finding.

The standard for determining the voluntariness of a statement is well established. In *People v. Prim* (1972), 53 Ill. 2d 62, 70, the court stated:

"Whether a statement is voluntarily given depends upon the totality of the circumstances. The test is whether it has been made freely, voluntarily and without compulsion or inducement of any sort or whether the defendant's will was overcome at the time he confessed. [Citation.] In making its decision the trial court need not be convinced beyond a reasonable doubt, and the finding of the trial court that the statement was voluntary will not be disturbed unless it is contrary to the manifest weight of the evidence."

 The trial court's finding that defendant's statement was voluntary is not contrary to the manifest weight of the evidence. Defendant's allegation that his statement was involuntary is supported only by his own testimony and the defense's attempt to use the testimony of Healy and Leverette as corroborating testimony.

Defendant testified that the injury to his eye occurred at the police station while being struck about his right eye and face with Officer McKeever's fists. This testimony is contrary to that of Officers McKeever and Curd. They testified that defendant's eye injury occurred at the scene of the arrest. The testimony of Healy was used to show that defendant's testimony was corroborated by the evidence. At trial, the following colloquy took place:

"Q. I will bring your attention to 4:43 in the morning, were you assigned to a patient, a Larry Watson?

A. Yes, I was.

Q. Do you recall what he was brought in for?

A. He got hit with a fist and he sustained a laceration above his eyebrow.

Q. And would that be a cut over his right eye?

A. A cut, right."

However, on cross-examination Healy's testimony was shown to be based solely on defendant's version of the events as he explained them to her while being treated at the hospital. The cross-examination of Healy, in pertinent part, is as follows:

"Q. You look at where the accident happened don't you?

A. Not usually, I just am concerned with what his complaint is.

Q. And that is what he is saying what happened, right?

A. Right.

Q. And you have nothing else to go on except from what he is saying, right?

A. Right.

Q. Did you talk to the police officers at all?

A. No I didn't."

The trial court found that the testimony of Leverette did not corroborate defendant's testimony. Leverette only saw defendant briefly as defendant was being arrested and taken away in the squad car. We do not believe the trial court's finding that defendant's testimony was not corroborated was against the manifest weight of the evidence.

Further, Officers McKeever and Curd testified that defendant's eye injury occurred at the time of his arrest. "[W]hen it is evident that a defendant has been injured while in police custody, the State must show, by clear and convincing evidence, that the injuries were not inflicted as a means of producing the confession. [Citations.] This requires more than the mere denial by the State's witnesses ***." *People v. Wilson* (1987), 116 Ill. 2d 29, 40.

Not only did the officers testify as to the circumstances of the injury, but Bertucci testified that the defendant, himself, told Bertucci that his eye injury occurred at the scene of the arrest. Thus, the only significant evidence of coercion was the subsequent statement by defendant. This circumstance was addressed in *People v. LaFrana* (1954), 4 Ill. 2d 261, 267, where the court explained:

"Where the only evidence of coercion is the defendant's testimony, and where this is contradicted by witnesses for the People, then of course the trial court may choose to believe the latter, and our recognition of the superior position of the trial court to evaluate the credibility of the witnesses before it makes us reluctant to reverse its determination."

We find that the trial court acted within its discretion. We cannot overrule unless the finding was against the manifest weight of the evidence. We do not find that the trial court abused its discretion or that the finding was against the manifest weight of the evidence.

Even if we find that defendant's statements were the product of physical coercion, the evidence proving defendant's guilt remains overwhelming. Complainant testified that she had been raped. The witness stated that after the rape occurred, she went home and told her mother what had happened. Her mother called the police and did not allow complainant to bathe. The police took complainant to the scene of the rape and then to the hospital. Complainant's vaginal smear was positive for spermatozoa. She testified that the sexual assault occurred at gunpoint. Police officers later found a gun in the

bushes near the scene of the arrest. Defendant matched the specific description given by complainant to the police and she identified defendant in a lineup at the police station.

We therefore hold that the trial court properly weighed the totality of the circumstances and that its decision that defendant's statement was voluntary is not contrary to the manifest weight of the evidence. Therefore, we will not disturb its decision on review.

Defendant also argues that his statements should be suppressed because he was not fully apprised of his *Miranda* warnings before interrogation. The purpose of the *Miranda* warnings is to insure that defendant is aware of his right to appointed counsel. (*Groshart v. United States* (9th Cir. 1968), 392 F.2d 172, 178.) If the defendant is not clear on the extent of his right to counsel, then the *Miranda* warnings given must be considered insufficient.

■ With respect to defendant's right to counsel, Officer McKeever's testimony at the suppression hearing, as well as at trial, was as follows: "I told him [defendant] that he had a right to an Attorney and also told him if he could not afford an Attorney, one could be appointed for him free of charge ***." The State argues that because this explanation was not time-specific, a "reasonable person" could have concluded that his right to counsel began immediately. We believe the State's argument assumes too much knowledge on the part of defendant.

The United States Supreme Court in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, stated:

> "As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning [the right to consult with a lawyer and to have the lawyer with him during interrogation] is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right." (*Miranda*, 384 U.S. at 471-72, 16 L. Ed. 2d at 722, 86 S. Ct. at 1626.)

Thus, with respect to defendant's oral statement, it is not clear that he was aware of his right to have an attorney present during questioning. "[T]he Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires." (*Miranda v. Arizona* (1966), 384 U.S. 436, 470, 16 L. Ed. 2d 694, 721, 86 S. Ct. 1602, 1626.) Therefore, Officer McKeever's recitation of *Miranda* was insufficient.

However, we find that defendant was fully apprised of his *Miranda* rights by Detective McWeeny and again by Assistant State's Attorney Bertucci prior to investigation. In determining whether a statement should be suppressed, the question is whether the statement was the result of intentional coercion. (*Oregon v. Elstad* (1985), 470 U.S. 298, 312, 84 L. Ed. 2d 222, 234, 105 S. Ct. 1285, 1295.) The second statement was given to Bertucci only after he had fully advised defendant of his *Miranda* rights and defendant had said that he understood them. Further, defendant was given the opportunity to read and make corrections regarding his statement. Bertucci testified that defendant's only change was a correction of the name of a street. Bertucci stated that he then asked defendant how he had been treated by the police. Defendant responded that he had "been treated okay." The trial court found that defendant's statements were voluntary. The trial court's finding was not contrary to the weight of the evidence, and it will not be disturbed on review.

■ Defendant correctly cites *United States v. Bland* (9th Cir. 1990), 908 F.2d 471, for the proposition that he is entitled to *de novo* review of a *Miranda* warning. However, that case did qualify the *de novo* standard of review. "The adequacy of a *Miranda* warning is a legal question reviewable de novo, [citation], although 'the factual findings underlying the adequacy challenge, such as what a defendant was told, are subject to clearly erroneous review.' [Citation.]" (*Bland*, 908 F.2d at 472.) The clearly erroneous standard allows a reviewing court to upset a finding of fact only if the fact finder's determination is "(1) completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Krasnov v. Dinan* (3d Cir. 1972), 465 F.2d 1298, 1302.

The witnesses appeared before the trial court and we believe the question of credibility is better left to its determination. *Government v. Gereau* (3d Cir. 1974), 502 F.2d 914, 921, *cert. denied* (1976), 424 U.S. 917, 47 L. Ed. 2d 323, 96 S. Ct. 1119.

■ Next, defendant contends the trial court erred in not supplying the jury with separate guilty verdict forms for each count charged. "Unless the affirmative defense of insanity has been presented during the trial, the jury shall return a general verdict as to each offense charged." (Ill. Rev. Stat. 1987, ch. 38, par. 115—4(j).) In this case, the evidence shows beyond a reasonable doubt that the victim was threatened with a gun and forced to engage in oral and vaginal copulation. The offense committed was an aggravated criminal sexual assault. This offense occurs when the accused displays, threat-

ens to use, or uses a dangerous weapon or any object fashioned or utilized in such a manner as to lead the victim under the circumstances reasonably to believe it to be a dangerous weapon. Ill. Rev. Stat. 1987, ch. 38, par. 12—14(a)(1).

Defendant argues that the record is unclear as to which form of sexual penetration the jurors found to be true. This argument would merit more consideration but for complainant's testimony corroborated by defendant's subsequent signed confession. Complainant testified that defendant told her to get on her knees. When she did, defendant forced her to engage in oral copulation. He then forced her to lie down, pulled down her pants, and forced her to have vaginal intercourse. Defendant's written statement described the events as follows:

> "[Defendant] then told [complainant] *** to give him a blow job. He told her to get on her knees and then he put his penis in her mouth for five or ten minutes ***.
>
> *** He then told her to lay down on her back.
>
> When she did as he said, he put his penis in her vagina. He then got up and let her up and walked back to the street."

Both pieces of evidence prove that an aggravated criminal sexual assault took place which included both vaginal and oral copulation.

In *People v. Jones* (1975), 60 Ill. 2d 300, the court stated:

> " '[W]here an indictment contains several counts arising out of a single transaction, and a general verdict is returned, the effect is that the defendant is guilty as charged in each count, and if the punishment imposed is one which is authorized to be inflicted for the offense charged in any one or more of the counts, the verdict must be sustained.' " *Jones*, 60 Ill. 2d at 309, quoting *People v. Lymore* (1962), 25 Ill. 2d 305, 308.

We therefore contend that the trial court did not err in not supplying the jury with separate guilty verdict forms for each count charged. The defendant was properly found guilty beyond a reasonable doubt.

Defendant argues that there was insufficient evidence to prove him guilty beyond a reasonable doubt as to the charge of attempted aggravated criminal sexual assault. The current standard of review with regard to sex offense crimes is as follows: " '[W]hether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins* (1985), 106 Ill. 2d 237, 261, quoting *Jackson v. Virginia*

(1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

■■ Complainant gave a clear description of defendant as the person who raped her. She also told the police that defendant was armed. When he was apprehended later that morning, the gun was found in the bushes near the scene of the arrest. In her testimony, complainant says that defendant pointed a gun at her stomach and took her in back of a store. She then describes the attempt at anal intercourse. In the written statement, taken by Bertucci, defendant's account also described the attempted anal intercourse. Further, we cannot ignore statutory law. A person commits an attempt when, with the intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense. Ill. Rev. Stat. 1987, ch. 38, par. 8—4(a).

Defendant contends that complainant's testimony is inadequate with respect to his attempt at anal intercourse. This contention does not appreciate the current standard of review. In *People v. James* (1990), 200 Ill. App. 3d 380, 394, the court specifically stated: "We will no longer require that in a case in which a sex offense is charged, the State must demonstrate either the victim's testimony is clear and convincing or substantially corroborated to prove guilt beyond a reasonable doubt." The defendant is correct in that in order to support a conviction, the State must establish proof of the *corpus delicti* outside of his confession. (*People v. Lambert* (1984), 104 Ill. 2d 375, 378.) However, under the current standard set forth in *James*, the State established proof of the *corpus delicti* from the testimony of the victim.

We therefore hold that the trial court did not err in finding defendant guilty beyond a reasonable doubt. This holding is based on defendant's signed confession, which was corroborated by the testimony of the complainant.

■■ Finally, defendant argues that his sentence was excessive in that the trial court abused its discretion by failing to consider mitigating circumstances and his potential for rehabilitation. Appellate court review of sentencing is deferential to the trial court. "The determination of the appropriate sentence to impose in a given case is a matter within the sound discretion of the trial judge and his decision will not be overturned absent an abuse of that discretion." (*People v. Wilson* (1991), 143 Ill. 2d 236, 250.) According to the record, the trial court "considered the presentence investigation report, the history and character of the defendant, [and] the matters that have been presented in mitigation which [were] extensive." Further, defendant's 17-year sentence was within the statutory limitations. (Ill. Rev. Stat.

1987, ch. 38, pars. 12—14, 8—4, 1005—8—1(a)(3), (a)(4).) The concern with rehabilitation is valid but it is not the most significant factor in determining defendant's sentence. "Although rehabilitation is a factor which must be considered, it is not the only factor and does not serve to outweigh other considerations which are persuasive of a severe sentence." *People v. Rogers* (1986), 141 Ill. App. 3d 374, 382.

For the foregoing reasons, we affirm the ruling of the circuit court.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.